U–HAUL INTERNATIONAL, INC., an Oregon Corporation, Plaintiff,

v.

JARTRAN, INC., a Florida Corporation; Jar Corporation, a Florida Corporation; James A. Ryder, an individual; and Sandra C. Tinsley, Inc., Defendants.

No. Civ. 80–454 PHX–EHC.

United States District Court, D. Arizona.

Feb. 17, 1981.

Dan M. Durrant, Ronald J. Cohen, Deana S. Peck, Frank M. Placenti, of Streich, Lang, Weeks & Cardon, P. A., Phoenix, Ariz., for plaintiff.

Daniel J. McAuliffe, Charles Johnson, Snell & Wilmer, Phoenix, Ariz., John McAvoy, David Branson, White & Case, Washington, D. C., John Behrendt, Gibson Dunn & Crutcher, Los Angeles, Cal., Robert H. Anderson, White & Case, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CARROLL, District Judge.

I am called on to decide whether a stipulated preliminary injunction preventing certain cost-comparison advertising should be extended to cover allegedly false and deceptive advertising involving equipment qualities of the advertiser or claimed comparisons with a competitor.

For reasons set forth in this Opinion, an Amended Preliminary Injunction will issue, although not to the extent sought by Plaintiff.

### THE PARTIES

Plaintiff U-Haul International, Inc., (U-Haul) brought this action against Jartran, Inc., (Jartran), JAR Corporation (JAR), James A. Ryder (Ryder) and Sandra C. Tinsley, Inc., (Tinsley) to enjoin continued publication of advertisements alleged to make false and misleading statements and comparisons of equipment leased by U-Haul and Jartran, and to recover damages alleged to result from such publications.

U-Haul, an Oregon corporation, has its principal place of business in Phoenix, Arizona. U-Haul provides accounting and coordination activities for over 90 rental companies which are incorporated in various states as wholly owned subsidiaries of U-Haul. Each of these local companies contracts with independent entities to act as local agents in renting U-Haul equipment to the public. These operations in totality are referred to as the U-Haul System. U-Haul's business activities are directed towards renting equipment to persons interested in moving household goods and personal effects. Equipment includes trucks and trailers of various sizes, and related items such as trailer hook-up accessories and items to facilitate transportation of household goods. In the 1979–80 period,

U-Haul's annual gross revenues were approaching $400,000,000, based on more than 5,000,000 annual rental transactions. The U-Haul System included approximately 100,000 trailers and 60,000 trucks. On a national basis, prior to the advent of Jartran, U-Haul handled virtually 100% of the one-way trailer rentals and about 80% of the one-way and local truck rentals of comparably sized units.

James A. Ryder founded Ryder System in the 1930s, and by 1978 that company (or related companies) was involved in rental and leasing of large trucks and trailers of the type used by freight carriers and was also engaged in specialized contract carrier services. In 1978, Ryder terminated all relationships with Ryder System, and he then formed Jartran to lease large truck and trailer units to franchisees, with Jartran to service the units. This plan and related business did not develop rapidly and in 1979, Jartran (with Ryder as Chairman and Chief Executive Officer) decided to go into the business of renting trucks and trailers in the consumer rental market—the same market in which U-Haul operated. Jartran's initial advertisements starting in August, 1979, involved rental of trucks. Jartran acquired its first trailers in early 1980, and ads mentioning trailers appeared in March, 1980. By late 1980, Jartran had approximately 2,100 dealers with 10,000 trucks and 19,000 trailers in its consumer rental division. In 1979, Jartran had gross revenues of approximately $5,000,000, and it was projecting $100,000,000 in 1980, with the majority of revenues coming from the consumer rental division. Jartran's advertising budget in 1980 was $6,000,000.

JAR owns 97% of Jartran's stock and Ryder owns approximately 87% of JAR's stock.

Sandra C. Tinsley, Inc., is the advertising agency that worked with Jartran in its consumer rental market advertising program—which is at issue in this proceeding.

## NATURE OF THE ACTION AND JURISDICTION

U-Haul's First Amended Complaint alleges five claims:

(1) violation of the Lanham Act, Section 43(a) (15 U.S.C. § 1125(a));

(2) violation of the Lanham Act, Section 44 (15 U.S.C. § 1126);

· (3) a common law claim for injurious falsehood;

(4) a common law claim for interference with prospective advantage; and

(5) a claim against Ryder that he is personally liable for damages sustained by Plaintiff due to the claimed false and misleading advertisements.

Jurisdiction is conferred on this Court by 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). The Court has jurisdiction over the pendent claims by reason of 28 U.S.C. § 1338(b), as well as, diversity jurisdiction under 28 U.S.C. § 1332.

## MOTION FOR PRELIMINARY INJUNCTION

U-Haul moved for a Preliminary Injunction, pending final disposition of the action, to enjoin defendants from:

1. Continuing false advertising of prices offered by Jartran for its goods and services, either alone or in comparison with prices charged by U-Haul;

2. Continuing false advertising concerning the performance, safety, stability, design, aerodynamics, or fuel efficiency of the equipment offered by Jartran, either alone or in comparison with the equipment offered by U-Haul;

3. Utilization of false and deceptive advertising and/or any other verbal or written disparagements of the U-Haul System or its goods and services, which interfere with the U-Haul System's contractual relationships with its dealers and/or the general public;

4. From engaging in such other and further conduct, as the Court may determine to be unjust and improper.

Prior to hearing, the parties stipulated to entry of a Preliminary Injunction, with respect to price advertising, as follows:

ORDERED that Jartran, Inc., its officers, agents, servants, employees and all those persons in active concert or participation with it, be and are hereby enjoined until the entry of a final order in this action from publishing any advertisement that (1) purports to state both the prices charged by U-Haul and those charged by Jartran and/or (2) states that Jartran saves consumers money by reason of the prices charged by Jartran while mentioning, displaying, or otherwise directly referring to U-Haul or any of its equipment.

U-Haul withdrew its request for a preliminary injunction related to dealer-contractual relationships, reserving its right to pursue this claim at trial on the merits, and accordingly, so-called dealer ads are not an issue at this time.

The preliminary injunction hearing commenced on December 16, 1980, and extended over all or parts of thirteen days, ending January 20, 1981, with more than 2,600 transcript pages of evidence and argument, and in excess of 300 exhibits. Twenty-four witnesses testified, either personally, or by way of deposition (and in several instances both ways). Each party in the proceeding was afforded an equal opportunity to fully present its evidence and arguments, and the record reflects that such opportunities were extensively pursued.

## LEGAL STANDARDS FOR GRANTING PRELIMINARY INJUNCTION

■ In the Ninth Circuit, the criteria for granting preliminary injunctive relief, as most recently stated by the Court in *Los Angeles Coliseum Com'n v. National Football League*, 9th Cir., 634 F.2d 1197 (1980), require that plaintiff establish:

(1) a strong likelihood of success on the merits;

(2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted;

(3) a balance of hardships favoring the plaintiff; and

(4) advancement of the public interest (in certain cases).

A moving party may meet its burden by demonstrating either:

(1) a combination of probable success on the merits and possibility of irreparable injury; or

(2) that serious questions are raised and the balance of hardships tips sharply in its favor.

The difference between these two tests is insignificant and a finding with respect to either establishes the basis for injunctive relief.

Consideration of the legal elements of plaintiff's claims and evidence relating to those elements is a necessary step in reaching a decision.

I do not agree with Defendant's rather fulsomely stated position that "The 'Public Interest' is not part of the Calculus for Equitable relief in a case of this nature".

■ The Lanham Act is itself a public interest statute intended to protect the consuming public and competitors from false and deceiving statements which a company chooses to utilize in advertising its goods or services. The fact that a claim is asserted under the provisions of that Act against the violator, albeit by a competitor of the false advertiser, does not serve to transmogrify resolution of such Lanham Act claims into a purely private proceeding. *Ames Publishing Co. v. Walker-Davis Publications, Inc.*, 372 F.Supp. 1, 14 (E.D.Pa.1974).

■ To suggest, as Defendants do, that a Court must find, prior to issuing an injunction to stop false advertising under the Lanham Act, that such injunction "will not disservice the public interest" is a non-sequitur, and is wholly without legal precedent.

## LEGAL ELEMENTS OF PLAINTIFF'S CLAIMS

*Federal Statutory Lanham Act Claims*:

Plaintiff's first two claims are based on Sections 43(a) and 44 of the Lanham Trademark Act, 15 U.S.C. § 1125(a) and § 1126.

The parties have agreed[1] for purpose of this motion, that the elements of Plaintiff's Lanham Act claim are as stated in *Skil Corp. v. Rockwell International Corp.*, 375 F.Supp. 777 (N.D.Ill.1974). These elements are whether:

(1) in its advertisements, Jartran made a false statement of fact about either Jartran or U-Haul products;

(2) these advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) such deception is material in that it is likely to influence the purchasing decision;

(4) the falsely advertised goods are in interstate commerce; and

(5) the plaintiff (U-Haul) has been or is likely to be injured as the result of the ads either by direct diversion of sales from itself to defendant or by lessening of good will.

With the exception of (4) above, each element of these statutory claims is at issue.

*Pendent State Law Claim*

U-Haul's state law claim at issue on this motion is for disparagement, and it relies on the same conduct in this regard that it urges to support its Lanham Act claims.

Plaintiff's memoranda relied on § 626, *Restatement of Torts*, as setting forth the elements of its state law claim for disparagement of property. The provision cited by Plaintiff is not current, since *Restatement of the Law of Torts, Second*, Volume 3, § 507–707A, was adopted and promulgated in 1977. Section 626 is entitled "Disparagement of Quality-Trade Libel" and that section, together with §§ 623A, 629 and 633 identify the restatement rules applicable to Trade Libel and the determination of pecuniary loss for which a publisher of an injurious falsehood is subject to liability.

Appellate Courts in Arizona have stated that they will follow the Restatement of Law on matters not covered by a statute or an earlier judicial decision. *Rodriquez v. Terry*, 79 Ariz. 348, 290 P.2d 248 (1955); *Taylor v. Security National Bank*, 20 Ariz. App. 504, 514 P.2d 257 (1973).

This state law claim will not be separately discussed in this opinion since the parties have not noted any factors which would differentiate it from those at issue under the Lanham Act claims.

## IMPLICATED ADVERTISEMENTS

Copies of Jartran ads representing U-Haul's complaints of alleged false and deceptive practices are attached as Appendices A through G. [Appendices omitted from publication at the request of the court.]

Appendices A and B ads were published in March, 1980, and included price comparison provisions which are not now at issue because of the stipulated preliminary injunction. However, U-Haul complains that the itemization of claimed Jartran features implies that U-Haul equipment is lacking in each of those respects.

Appendix C depicts a U-Haul and Jartran trailer and was a trailer ad utilized by Jartran in May, 1980. U-Haul objects to this ad, which is captioned "COMPARE BEFORE YOU MAKE A MOVE", since the U-Haul trailer depicted is not one of its latest models, and was reduced in size in the ad, as compared to the Jartran trailer, and also objects to the text of the ad:

Only Jartran can rent you trailers designed for the times.

BRAND NEW TRAILERS: Lightweight, perfectly balanced trailers that are easy to hook up.

GAS SAVING DESIGN: All Jartran trailers are aerodynamically designed to save gas and provide exceptional road stability. Who can rent you a trailer that won't push you around? Jartran can.

This ad also includes the slogan "No one can rent you a new trailer like Jartran can."

---

1. The parties' agreement allows the Court to consider claims made by Jartran regarding its own equipment, as well as claims relating to U-Haul's equipment, and accordingly it is not necessary at this time to determine the extent, scope and relationships of § 43 and § 44 of the Lanham Act.

Appendix D was published in May, 1980, and included pictures of a U-Haul and Jartran truck. This ad has the headline invitation "COMPARE BEFORE YOU MAKE A MOVE." Objectionable statements in this ad principally relate to the claims that "Jartran trucks and trailers are aerodynamically designed to save gas and to improve road stability.", as well as "Jartran can rent you lightweight, well balanced trailers that are easy to hook up."

Appendices E, F and G represent the evolution of what Jartran refers to as its "Big 10 Mileage Guarantee". The first fuel guarantee ad (Appendix E) headlines:

WHY RENT A TRUCK THAT MAY DELIVER ONLY 5 MPG?

JARTRAN GUARANTEES YOU 10 MPG OR MORE.

The text of the ad reads:

Jartran guarantees you at least 10 mpg when you rent one of our 12' or 15' trucks for your one-way move. You can even hook up a Jartran trailer and we'll still guarantee you at least 10 mpg on your truck. . . . And when you rent a Jartran 12' or 15' truck for your one-way move, you'll get 10 mpg or we'll pay you for the extra gas.

The Jartran slogan "No one can rent you a truck or trailer like Jartran can." was a part of the ad.

The headline on the Appendix F "Big 10" ad states:

MANY RENTAL TRUCKS AVERAGE 5 MPG. JARTRAN GUARANTEES YOU 10 MPG OR MORE.

and the ad text was identical to Appendix G.

Phase 3 of the "Big 10" ad, Appendix G, says

MOVING ONE WAY?

Jartran guarantees you 10 mpg or more!

and the ad message remains the same.

Other ads describing Jartran trailers used phrases such as "Superb Road Stability", and "Easy to Hook Up".

## THE MERITS

### (Analysis of the Law and Evidence)

#### JARTRAN STATEMENTS—FACT OR FANCY:

Defendants urge that the initial inquiry is to determine whether any of Defendants' statements about which Plaintiff complains constituted a statement of "fact". If not, Defendants would argue, it is of academic interest only whether the statements in the ad were true or false.

From this desideration, Defendants in their Post-Hearing Memorandum (although not in their earlier Memoranda) argue that the statements Plaintiff finds objectionable are only "Puffery" and without the ambit of Lanham Act protection.

Professor Prosser in his treatise on Torts (3d Ed.) p. 739, gives us the essence of puffery:

The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific, on the theory that no reasonable man would believe him, or that no reasonable man would be influenced by such talk! [2]

It is clear that the concept of "puffery" as a permitted form of advertising or sales technique has existed for many, many years. In its earlier history, it involved situations, or words of a superlative nature, the proof of which was virtually impossible, i. e., better, best, brighter, brightest, etc. Over the spread of time, and with the increased (or perceived) reluctance of Courts to resolve such claims, the rule has expanded until it is stated by Prosser as being a "privilege to lie". By Defendants' perception, puffery is as difficult to define as pornography, although they appear to share Justice Stewart's ability to "know it when [they] see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

2. The rationale for this conclusion is suspect, considering the increased utilization of exag- gerated product claims by advertisers.

The difficulty of trying to resolve as puffery or fact particular words or phrases by reference to a prior Court decision, or to determine the basis for a Court's holding is illustrated by the opinion in *Bose Corporation v. Linear Design Labs, Inc.*, 467 F.2d 304 (2d Cir. 1972), in which the appellate court stated by way of dictum, that the "alleged misrepresentations consist *largely* of 'puffing', except for the factual statement that the frequency response had been measured at 30 to 20,000 Hz", 467 F.2d at 311.

In *Bose*, (unlike the pending U-Haul action) the Court noted a trial court's difficulty in making findings of fact on the basis of "affidavits or, even on the preliminary hearing which is frequently short.":

> ... To require an ultimate finding on such matters as whether claims of *quality* ascribed to a product are definitely false would be more likely to mandate guesswork than informed judgment. We construe Judge Motley's opinion to mean simply that the plaintiff has failed to sustain the burden of establishing at this early stage the falsity of the *representations of quality.*

467 F.2d at 311 (emphasis supplied).

Contrary to Defendants' position that "Puff Has Lost Its Magic", I conclude, without setting forth an exhaustive analysis of prior trial court or appellate decisions, that there are restraints under the Lanham Act and the tort of disparagement which place reasonable limits on the advertiser's (or advertising agency) willingness to make unfounded or false claims regarding the *quality* of the advertised product, or in comparisons of that product with others on the market.

Advertising designed to inform the consumer public of a product's attributes or real superiority with a competitive product should be encouraged. On the other hand, there appears to be little purpose in protecting or encouraging advertisements which knowingly overstate the qualities of one's own product or which falsely disparage, either directly or by implication, another's products. It is this latter practice which

has perhaps contributed to what one advertising expert noted was the consumer "becoming progressively more skeptical."

Various advertising statements made by Jartran regarding its equipment singularly and in a comparative sense with U-Haul equipment exceed the scope of permissible puffing and hence, are within the protections afforded by the Lanham Act. The claims made by Jartran are similar to advertisements considered in *Toro Company v. Textron, Inc.*, 499 F.Supp. 241, 249 n. 18 (D.Del.1980) and determined to be more than mere puffing:

> ... None of Jacobsen's claims which I have found to be false can be characterized as puffs, however. Those claims are not the kind of hyperbolic statements one would take or be intended to take literally. On the contrary, they are manifestly meant to be believed and relied upon and I cannot say that a reasonable prospective purchaser would fail to take them seriously.

499 F.Supp. at 253 n. 23.

The Court noted that " 'An advertisement characterized as puffing is one that is not deceptive for no one would rely on its exaggerated claims' ", quoting 1 R. Callman, Unfair Competition, Trademarks and Monopolies (3d Ed. 1967 and 1979 Supp.) § 19.-2(b)(2). *Id.*

Claims reviewed in the *Toro* case, and found to be more than puffing, included:

> Power Burst helps prevent stalling in heavy drifts.
>
> The Sno-Burst has the biggest engine in its class.
>
> No priming means easier, faster starting.
>
> Higher ratio gives smoother running, less smoking.
>
> The Sno-Burst is easier to push, simpler to maneuver.
>
> The Sno-Burst's handle adjusts to the individual.

499 F.Supp. at 249 n. 18.

These claims are remarkably similar to those made by Jartran in its truck and trailer ads.

## JARTRAN'S ADVERTISING PROGRAM

Jartran's initial entry into the consumer rental market involved trucks. Its first advertisements (under the name of Jar Pool Truck Rental) made headline price comparisons with U-Haul and represented that Jartran's charges for similar moves were substantially less. The ad text did not refer to U-Haul equipment, and included the modest claim that "You get to choose from a full selection of brand-new-dependable Dodge and other fine gas and diesel trucks. With comfortable, roomy cabs and space-saving bodies designed specifically for long-distance moving." Later truck comparative price ads started to make more expansive claims and implications of operating advantage: "Who can rent you gas-saving trucks with automatic transmissions, you don't have to be a truck driver to drive?" and the phrase "No one can rent you a truck like Jartran can."

Peter Barnes, formerly associated with the Tinsley Agency, stated goals for the new Jartran consumer rental division ad campaign were to:

> . . . quickly establish Jartran as a new entrant in the consumer truck rental market and, also, to move inventory, move trucks from where they were building up in one market and move them out into the system.[3]

Later, towards the Spring of 1980, Barnes testified, Jartran and Tinsley:

> . . . created a number of new approaches with the same goals in mind but new approaches to Jartran's advertising that would be, hopefully, much more effective with higher readership potential.[4]

This program included the removal of any direct reference to U-Haul in the advertising, because of concern about the U-Haul legal action.

The Tinsley supervisor (Marvin Tinsley) for the Jartran Account testified that while each ad campaign was separate, "they're not divorced one from the other" and he compared the overall ad program to a football season, stating "At the end of the season, its the bottom line that counts".

It is clear from Marvin Tinsley's testimony that the effect of various Jartran ads, although not including any reference to U-Haul, were comparative ads. Thus, he testified:

Q. You would concur then that it was intended that the reader would include U-Haul as being one of those, 'many rental trucks average five miles per gallon'?

A. Yes. That's quite obvious, if you know the percentage of the market.[5]

He also considered the Jartran trailer ad, which included a U-Haul trailer and which claimed "all Jartran trailers are aerodynamically designed to save gas and provide exceptional road stability. Who can rent you a trailer that won't push you around? Jartran can", was, viewed as a whole, a comparative ad:

A. Since U-Haul has a virtual monopoly on the trailer business, I can't name another national company that rents trailers. I think it's obvious to conclude that the answer would be yes.

Q. Sure. That is the Jartran trailer doesn't push you around, and the U-Haul trailer does, correct?

A. Yes.[6]

## JARTRAN ADVERTISING CLAIMS

U-Haul contends that ad statements respecting Jartran's truck and/or trailer road stability, aerodynamic design, fuel economy, and safety, are false, misleading, and deceptive.

■ Jartran's contention that an actionable claim under the Lanham Act must involve a "direct and explicit comparison to a named competitor" is incorrect for at least two reasons: First, an actionable claim can

---

**3.** Transcript of Hearing on Plaintiff's Motions for Preliminary Injunction (TP1), Vol. VII at 1605–06.

**4.** *Id.*

**5.** TP1, Vol. VI at 1390.

**6.** TP1, Vol. VI at 1393–94.

result from a misstatement solely related to Jartran and its products. Second, there need be no "direct and explicit comparison to a named competitor". *Alberto-Culver Co. v. Gillette Co.*, 408 F.Supp. 1160, 1163 (N.D.Ill.1976).

■ If any of Jartran's statements convey a false message regarding either Jartran's equipment, or that of U-Haul, "irreparable injury for the purpose of injunctive relief would be present for the very reason that in an open market it is impossible to measure the exact amount of [the competitor's] damages." *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 192 (2d Cir. 1980).

The following Jartran advertising statements are representative of those about which U-Haul complains:

TRUCKS

Gas-saving design: Greater stability and safety

When you rent from Jartran you get a new truck or trailer that's specially engineered for stability and to save fuel

Why rent a truck that may deliver only 5 MPG? Jartran Guarantees you 10 MPG or more

Jartran guarantees you at least 10 mpg when you rent one of our 12′ or 15′ trucks for your one-way move. You can even hook up a Jartran trailer and we'll still guarantee you at least 10 mpg.

TRAILERS

Only Jartran can rent you trailers designed for the times

. . . Lightweight, perfectly balanced trailers that are easy to hook up

GAS SAVING DESIGN: All Jartran trailers are aerodynamically designed to save gas and provide exceptional road stability. WHO can rent you a trailer that won't push you around? Jartran can.

Superb Road Stability: Jartran's trailer design makes you feel like you're hardly pulling anything at all.[7]

It should be remembered that the Court is not at this time making ultimate findings of fact after a full trial on the merits. The discussion of stability (as the other claims) and the parties' contentions in that regard is directed only towards plaintiff's likelihood of success on the merits.

■ A statement actionable under the Lanham Act may be an affirmatively misleading statement, a partially incorrect statement, or a statement which is untrue as a result of a failure to disclose a material fact. *Skil Corp., supra*, 375 F.Supp. 777.

The Courts have also recognized that a statement can be literally true, but nevertheless misleading in the way it is presented.

The Court held in *McNeilab, Inc. v. American Home Products Corporation*, 501 F.Supp. 517 (S.D.N.Y., 1980), that the "objective truthfulness [of the ads] does not immunize the commercials from scrutiny under the Lanham Act", stating:

That Section 43(a) of the Lanham Act encompasses more than literal falsehood cannot be questioned. Were it otherwise, clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophiscated deception is most needed. ·

JARTRAN STATEMENTS THAT WERE ACTUALLY FALSE

I find that the following Jartran statements which were "manifestly meant to be believed and relied upon" by prospective renters of equipment, were actually false:

(1) Only Jartran can rent you trailers designed for the times.[8]

The record establishes that U-Haul had trailers that were designed "for the times", i. e., lightweight trailers, with aerodynamic features, and in a smaller size to accommodate more compact towing vehicles.

(2) Jartran Guarantees you 10 MPG OR MORE

---

7. See Appendices.

8. Appendix C (emphasis supplied).

Jartran guarantees you at least 10 mpg when you rent one of our 12′ or 15′ trucks for your one-way move. You can even hook up a Jartran trailer and we'll still guarantee you at least 10 mpg on your truck.[9]

Whether these "Guarantee" ads are false necessarily involves the meaning of the word guarantee, since it is clear that not all Jartran trucks will obtain 10 miles per gallon of fuel, regardless of use or method of operation, and *in no event* would this mileage be realized when towing a Jartran trailer behind a Jartran truck. In any event, whatever the meaning of guarantee, Jartran does not make such "guarantee" for "more" than 10 MPG.

I agree with the statement in *Toro, supra*, 499 F.Supp. at 252, that "While it is seldom advisable to dissect an advertisement 'with dictionary in hand' to determine whether it is deceptive" a reference to the dictionary for the meaning of "guarantee" demonstrates that Jartran's Big 10 "claim is literally false".

Although Federal Trade Commission decisions are not determined in a proceeding by a private party asserting rights under the Lanham Act, FTC regulations are instructive in such action. *Skil Corp., supra.* 375 F.Supp. at 786 n.14. Federal Trade Commission Regulation, 16 CFR § 239.7, recognizes that:

Guarantees are often employed in such a manner as to constitute representations of material facts....

Example 1 given under that regulation is similar to the Jartran mileage ads:

'Guaranteed for 36 months' applied to a battery is a representation that the battery can normally be expected to last for 36 months and should not be used in connection with a battery which can normally be expected to last only 18 months.

and such ads are false and deceptive.

Other claims which are literally false, based on a preponderance of evidence

presented at this hearing, are that Jartran trucks have "Greater stability and safety",[10] and that Jartran trailers provide "exceptional",[11] or "Superb" road stability. For this purpose, I consider Mr. Ryder's definition of unstable as appropriate—"Well, it would swing or it would not track right".[12]

■ One caveat should be noted here and with respect to other advertising falsities alleged by U-Haul. Jartran did not have to prove the truth of its asserted product claims; the burden in this regard rested on U-Haul, and it could not sustain its burden of persuasion by its repeated assertions (and proof) that Jartran had done little, if any, testing of Jartran trucks or trailers, and no comparative testing of U-Haul products. The correct rule in this regard was stated as follows in *Toro, supra*, 499 F.Supp. at 253:

I cannot accept Toro's argument that it is entitled to prevail on a claim under Section 43(a) simply by showing that a defendant's advertising claim is unsubstantiated. The plain language of Section 43(a), which prohibits false rather than unsubstantiated representations, requires that a plaintiff establish not merely that the defendant's claims lack substantiation but also that it is false or deceptive.

## JARTRAN STATEMENTS WHICH HAVE A TENDENCY TO MISLEAD, CONFUSE OR DECEIVE

Here, we are as stated in *McNeilab, supra*,

... dealing not with statements which are literally or grammatically untrue .... Rather, we are asked to determine whether a statement acknowledged to be literally true and grammatically correct nevertheless has a tendency to mislead, confuse or deceive....

501 F.Supp. at 524.

In this situation, *McNeilab* cited *American Brands, Inc. v. R. J. Reynolds Tobacco Co.,*

---

**9.** Appendices E, F and G.

**10.** Appendices A and B.

**11.** Appendix C.

**12.** TP1, Vol. II at 32–.

413 F.Supp. 1352, 1356–57 (S.D.N.Y.1976) in holding that:

> The public reaction to [the] advertisement will be the starting point in any discussion of the likelihood of deception ... If an advertisement is designed to ·impress ... customers ... the reaction of [that] [group] will be determinative.

*McNeilab* went on to discuss the plaintiff's burden in demonstrating "whether true statements are misleading or deceptive despite their truthfulness", noting that:

> [i]t is not enough to place the statements alone before the Court: The plaintiff must adduce evidence (usually in the form of market research or consumer surveys showing how the statements are perceived by those who are exposed to them. This does not mean that the conclusions of market researchers and other expert witnesses are binding on the court.... Though the court's own reaction to the advertisements is not determinative, as finder of fact it is obliged to judge for itself whether the evidence of record establishes that others are likely to be mislead [sic] or confused. In doing so, the court must, of course, rely on its own experience and understanding of human nature in drawing reasonable inferences about the reactions of consumers to the challenged advertising.

501 F.Supp. at 525.

U-Haul in this case presented two consumer perception surveys undertaken by different marketing research groups.

The first report (three questionnaires) which was done under the organization and direction of Dr. Peter Sherrill, Vice President and Technical Director of Field Research Corporation (FRC), was described as a "simple survey" and "an objective assessment of consumer perceptions regarding some advertisements".

One questionnaire surveyed consumer perception of a Jartran price comparison ad,

and need not be considered for purposes of this motion.

Another questionnaire sought to determine consumer knowledge as to which companies rent trucks or trailers for do-it-yourself moving, and no advertisement was shown to these interviewees.

The third questionnaire related to the "Big 10" mileage advertisement headlined "Many rental trucks average 5 mpg. Jartran guarantees you 10 mpg or more".[13] Question 2 of this questionnaire reads:

> Part of the advertisement refers to rental trucks that average 5 miles per gallon. Based on your reading of the advertisement, what companies do you think the ad is referring to when it talks about rental trucks that average five miles per gallon.[14]

After small technical corrections related to survey procedures, 54.6% of the 314 persons interviewed said "U-Haul" in response to question 2.

The FRC interviews were conducted in Phoenix, Arizona November 20 to December 2, 1980, and Dr. Sherrill gave detailed explanations about formulation of the questions, interview selections and procedures, data review and tabulation. Individual interviews were limited to one questionnaire, i. e., persons shown price comparison ads were not asked about their knowledge of self-moving companies, or their perception of the mileage ad, and vice versa.[15]

Jartran has numerous objections to Dr. Sherrill's survey, including without limitation, the complaint that he allegedly didn't opine that it accurately reflected consumer perception of the ad; that it wasn't directed to the relevant consumer group; that the questionnaire suggested answers; and that it was created and conducted in cooperation with plaintiff's counsel.

I find that Dr. Sherrill's survey, and his testimony, related to an issue of importance in this proceeding: Would persons reading

---

13. Appendix F.

14. Plaintiff's Exhibit 13, at 30.

15. I assume for purposes of discussion that the mileage ads and other ad claims regarding stability, etc., of Jartran equipment are not literally false, and that consumer perception of such ads is a relevant consideration.

a Jartran ad which made statements or claims about Jartran equipment perceive that such statements or claims were made on a comparative basis with U-Haul which was not named in the ad? The survey results clearly reflect such perception.

Dr. Sherrill did not attempt to relate his Phoenix survey to a nationwide poll, nor to guess what results might be disclosed if a similar survey was undertaken elsewhere; he was not a partisan in the proceeding and he responded fully and fairly to questions asked of him by Court or counsel. His questionnaire did not suggest answers, and other than being retained by plaintiff's law firm and given the particular ads, was not directed or controlled in any manner by counsel.

Again, the record is clear that not all Jartran trucks get 10 MPG, and not all U-Haul trucks get 5 MPG. A survey is just that; it does not ask everyone every conceivable question, and it was not necessary for Dr. Sherrill to inquire whether "some" U-Haul trucks only got 5 MPG in order to have a credible study.

The second U-Haul consumer perception survey was handled by Earl DeBerge, Director of Behavior Research Center (BRC), utilizing certain services of ASI Market Research (ASI).[16] BRC personnel prepared the questionnaires used in the survey and monitored the ASI session in Los Angeles, California, on December 11, 1980, at which the survey was conducted.

The record fully reflects, through direct and cross-examination, the nature of the ASI facilities and the practice whereby three groups of persons were each shown a different ad—a price comparison ad, an ad comparing Jartran and U-Haul equipment, and a mileage comparison ad—and each group responded to a series of questions pertaining to the ad which had been displayed to them.

The purpose of the BRC survey was to determine whether persons viewing each ad perceived certain comparisons as having been expressly made between Jartran and U-Haul in the ad, or made by implication, or not having been made at all.

DeBerge claimed to use standard procedures for what he described as a "sampling" survey and he testified:

> [I]f ... in my judgment, you were to take this ad test and execute it anywhere else in the country, in the same conditions, the probability of differences in responses is remote. ... [17]

He said that the purpose of this sampling survey was to "get a reading of what a cross-section of reasonable people perceive in a commercial, or in a print ad" and that "It doesn't require the large scale probability sampling to do that. It is a different animal".[18]

The survey used the following question format for each ad:

> For each statement below please indicate whether you feel the statement was neither made nor implied in the ad, was actually made in the ad, or was implied in the ad. (Mark one choice *only* for each statement.) [19]

The summary of the survey regarding the price comparison ad which was headlined: [20]

> U-Haul it to San Francisco ........ $ 1131
> Jartran it to San Francisco ........ $  499

is as follows (excluding remarks related to price comparison):

> We also found that over half of respondents responded that the ad stated or implied that: (a) Jartran trucks are newer than U-Haul trucks, (b) Jartran trucks are easier to drive than U-Haul trucks, (c) Jartran trucks are more fuel efficient than U-Haul trucks, and (d) Jartran trailers have gas saving features not available with U-Haul trailers.

---

**16.** The extent of Jartran's objection to the BRC survey is typified by its apparent criticism of the word "implied" and the suggestion that somehow there is possible confusion about the meaning of that word.

**17.** TP1 Vol. III at 617.

**18.** TP1 Vol. III at 618–19.

**19.** Plaintiff's Exhibits 143, 144, 145. (Emphasis in original.)

**20.** Appendix A.

Just under 40 percent said the ad stated or implied that Jartran trucsk (sic) have greater stability than U-Haul trucks.

Finally, roughly one in five opined that the ad stated or implied that Jartran trucks are safer than U-Haul trucks.[21]

The survey summary for the trailer comparison ad which depicted both a Jartran and U-Haul trailer, and was headlined "Compare before you make a move"[22] showed significant consumer perception of comparative claims about U-Haul equipment:

In addition, half or more of respondents said that the ad *stated or implied* each of the following about U-Haul trailers being:

a. not designed for the times

b. not perfectly balanced

c. not aerodynamically designed to save gas, and

d. not new

Furthermore, 37 percent said the ad stated or implied that U-Haul trailers are not stable on the road; 41 percent that U-Haul trailers are not easy to hook up; and 47 percent that U-Haul trailers will push you around on the road.

Finally, in direct comparison statements, 76 percent said the ad actually stated or implied that Jartran trailers are easier to use than trailers rented from U-Haul and 55 percent said the ad stated directly or by implication that Jartran trailers are safer than trailers rented from U-Haul.[23]

The summary for the mileage ad, headlined "Why rent a Truck that may deliver only 5 MPG? Jartran Guarantees you 10 MPG or more.",[24] shows similar U-Haul comparison perceptions, although U-Haul is nowhere mentioned in this ad:

Half of all respondents stated that U-Haul was one of the truck rental companies that came to mind when they read the headline. One in four fed back the name of the ad sponsor. Other companies mentioned included Ryder, Avis, Hertz, Budget and One-way.

The tendency for respondents to compare Jartran to other rental companies, and specifically to U-Haul, is reflected in their responses in which the following percentages opined that the ad either *stated or implied*:

63%—that comparably-sized Jartran trucks cost less to rent than U-Haul trucks.

56%—that on the average, comparably-sized U-Haul trucks get less MPG than Jartran trucks.

47%—that U-Haul cannot rent them trucks as efficient or modern as Jartran trucks.

39%—that U-Haul trucks only get 5 MPG.

36%—that cab and operation conveniences offered by Jartran are not available from U-Haul.[25]

It is difficult to accept Jartran's argument in its Post-Hearing Memorandum that the BRC study "does not focus on the issue before the Court", inasmuch as the study—whatever its shortcomings—speaks directly to how these ads were perceived by a group of people who were exposed to them.

Jartran repeats its FRC objections with respect to the BRC study, as well as vigorously attacking the ASI aspects of that study. *McNeilab, Inc., supra*, discusses ASI and criticism of its Los Angeles facility and its interviewee selection and testing procedures as espoused by a market research "expert". The criticisms considered (and rejected) in *McNeilab* are remarkably akin to the testimony of Victor Cole presented here on behalf of Jartran:

Once again, his criticism would be well taken if the question before the court required some sort of quantitative deter-

---

21. Exhibit 145, Summary.

22. Appendix C; Plaintiff's Exhibit 144.

23. Plaintiff's Exhibit 144, Summary (emphasis in original).

24. Appendix E., Plaintiff's Exhibit 143.

25. *Id.*, Summary (emphasis in original).

mination of the extent to which consumers are mislead [sic] by AHP's advertising. But a qualitative rather than a quantitative determination is enough to support a conclusion that an advertisement 'tends' to mislead, if the qualitative showing establishes that a not insubstantial number of consumers receive a false or misleading impression from it. . . .

501 F.Supp. at 528.

It would unduly extend this already overlong Memorandum Opinion to set forth and respond to each of the objections to the BRC and ASI studies as articulated by Jartran's experts and as rescripted by its able counsel. Suffice it to say that I do not find the BRC survey to be "so fraught with incompetencies and irrelevancies that it must be ignored". Again, U-Haul's counsel did not direct or control the preparation or execution of the survey and the design of the survey was not "blatantly biased".

Basically, Jartran's objections "go only to the weight, rather than to the admissibility of the evidence". *General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F.Supp. 716, 734 (W.D.Mich.1964). The court's rhetorical question in *General Motors* " . . . what is a proper way to conduct such a survey?" 226 F.Supp. at 737, and its conclusion in that regard are also helpful in considering Mr. Cole's comments about the FRC–BRC studies:

> In essence then, there appears to be no formula, other than look at all the factors involved, by which to determine the sufficiency and worth of a poll such as the one presented in the case at bar.

226 F.Supp. at 738.

Mr. Cole acknowledged in effect that it is relatively easy for one ad expert to criticize a survey done by another expert:

> THE COURT: . . . I would suggest without being critical at all, Mr. Cole, that any interviewer, or surveyor, such as yourself could also take surveys that other people would have done and critique them the same kind of way that you are doing this one.

THE WITNESS: I believe so, sir. And, I am sure that Dr. Sherrill could critique my surveys, I'm sure, at least as skillful.[26]

*Pittsburgh Press Club v. United States,* 579 F.2d 751 (3d Cir. 1978), cited by Jartran in its argument that the two U-Haul survey studies should be excluded from evidence, is inapposite. There, the court noted that the survey was offered to "provide the truth of the extrajudicial declarant's assertions", 597 F.2d at 757 n. 101 and the court distinguished an earlier decision which discussed a survey or poll analogous to those at issue here:

> . . . the poll sought to ascertain housewives' *beliefs* as to the contents of an orange drink, and was admitted to show those beliefs, and not to show the truth of the housewives' assertions (i. e., whether or not it was orange juice).

579 F.2d at 757 n. 10, *discussing United States v. 88 Cases, etc.,* 187 F.2d 967, 974 (3d Cir.), *cert. denied,* 342 U.S. 861, 72 S.Ct. 88, 96 L.Ed. 648 (1951).

The impact of these two surveys—uncontested at least by any surveys undertaken by the advertiser—in the context of a preliminary injunction hearing may well be different than in a final hearing on the merits. The issue now is whether these surveys contribute to Plaintiff's overall showing for preliminary relief, and I find that they accomplish that function.

U-Haul and Jartran each presented a college professor who qualified as a market research expert to express opinions regarding what consumer perceptions might be regarding Jartran ads.

U-Haul's expert, Dr. Donald Kanter, is a marketing professor at University of Southern California, with advertising agency associations. He looked at several individual Jartran ads and then considered such ads in the context of the entire ad sequence. He stated:

> My overall impression is that Jartran advertising operates by asking consum-

26. TPl Vol. IX at 2042.

ers, as it were, to compare the company with U-Haul.[27] and he went on to state that the ads were comparative of U-Haul equipment and services.

The overall weight to be afforded Dr. Kanter's testimony is affected by his reluctance to give an opinion regarding any one ad, since he expressed an inability to objectively clear his mind of what he knew from his review of several ads. A fair reading of Dr. Kanter's testimony does not, as Jartran states, support its argument that any comparative aspects of these ads would constitute puffery.

■ Dr. Michael Ray, a marketing professor at Stanford and an industry consultant, was Jartran's expert. Jartran's perception of Dr. Ray's testimony best explains why I find it less persuasive than other evidence in the record:

> Dr. Ray testified that claims of superiority, without explicit comparison to a specific dimension and an identified competitor, are simply puffery.

I concur in the reasoning expressed by the court in *Toro* that advertising statements placed in an ad knowing or intending that they are of the type that will affect the consumer's judgment, are not puffery, but rather constitute actionable representations within the meaning of the Lanham Act.[28]

Advertising claims by Jartran respecting its trucks and trailers, if assumed to be literally true and grammatically correct, nevertheless have a tendency to mislead, confuse or deceive.

I find that the evidence of consumer perception of Jartran ads indicate that the ads tend to state or represent that Jartran equipment is:

Significantly more stable

More fuel efficient

More perfectly balanced

Easier to hook up

than U-Haul equipment, which it is not.

Conversely, consumer perception of the Jartran ads leads them to conclude that U-Haul equipment is:

Not designed for the times

Not aerodynamically designed to save gas

Not new

whereas the preponderance of evidence establishes that a portion of U-Haul equipment is new, recently designed and with aerodynamic features to save gas.

Overall consumer perception from the multifaceted claims of uniqueness or superiority is that Jartran's equipment is safer than that of U-Haul, and again, the evidence in this hearing supports U-Haul's position that its equipment is as safe as that of Jartran. In fact, there is nothing in the record from which it could be reasonably inferred that the equipment of *either* company is unsafe if properly operated.

It is somewhat quixotic in this case to review extensive testimony to determine whether Jartran was in fact comparing its equipment with the unnamed U-Haul.

Jartran knew that its *only* competitor on a nationwide basis for one-way trailer moves was U-Haul and that 80% of the one-way truck rental business was handled by U-Haul. It required no prescience on the part of Jartran to know that the statements in its individual ads and the impact of the ad campaign would be comparative of U-Haul. As Marvin Tinsley testified, these ads were intended:

> ... to give the consumer a break, which we felt he had not been getting ... in terms of comfort, convenience and the newness of the vehicles.[29]

While denying an intention to compare Jartran and U-Haul with respect to the "won't

---

27. TP1 Vol. VI at 1220.

28. Victor Cole, Jartran's ad critique witness, would have us ignore the opinions of both professors, since he believes consumer perception can only be determined through a survey. TP1 Vol. IX at 2020.

29. TP1 Vol. V at 1053. In addition, Sandra Tinsley, president of the ad agency testified (TP1 Vol. V at 1132):

Q. So any price comparison ads that were run on behalf of Jartran by your agency compared both price and product?

A. Yes.

push you around" claim, he acknowledged that "it is difficult to refute" such a conclusion.[30]

The apparent absence of investigation and meaningful testing by Jartran of either its own equipment or that of U-Haul's as a part of its advertising program demonstrates an "aura of indifference to plaintiff's rights" and "amount to a species of bad faith and wrongful intent." *W. E. Bassett Company v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970).[31]

■■■ Intent to confuse or mislead is not an element of a cause of action under the Lanham Act. Arguably, however, if such intent is shown, the plaintiff need not show actual consumer confusion, as the Court can presume that the advertiser accomplished his purpose. I agree in this regard, with the holding in *McNeilab, supra*:

> ... in a false advertising case such as this one, proof that the advertiser intended to communicate a false or misleading claim is evidence that that claim was communicated, since it must be assumed that more often than not advertisements successfully project the messages they are intended to project, especially when they are professionally designed, as the ones involved here were.
>
> After reviewing the evidence, we find that although AHP may not have set out deliberately to develop a misleading advertising campaign for MSA, the strategy it adopted as the basis for its campaign created a substantial risk of misleading the public, a risk that was called to AHP's attention on several occasions. Nonetheless, AHP did nothing to insure that the misleading potential of its strategy did not materialize.

501 F.Supp. at 530.

See also: *Testing Systems, Inc. v. Magnaflux Corporation*, 251 F.Supp. 286, 289 (E.D. Pa.1966)

■■ Plaintiff contends that Jartran's slogan, or sign-off is a statement of fact and not puffery:

> No one can rent you a truck [and trailer] like Jartran can.

Dr. Kanter considered it an "enormous statement", when weighed as a part of the overall theme of the ad campaign.[32] I find, however, that of the various claims asserted by Jartran in its ads, this one more nearly approaches hyperbole, puffery, or an advertiser's "hype", and accordingly, its continued use will not be enjoined *pendente lite*.

## CLEAN HANDS DOCTRINE AND ITS APPLICATION IN INJUNCTION ACTIONS UNDER THE LANHAM ACT

The maxim "He who comes into equity must come with clean hands", is clearly applicable in injunction actions under the Lanham Act. *Ames Publishing Co., supra*, 372 F.Supp. at 13–15. Therefore, the question here is whether Jartran, as it claims, has demonstrated that U-Haul has engaged in any misconduct which would render the issuance of an injunction inequitable. *Toro, supra*. For the reasons hereinafter discussed, I conclude that the clean hands doctrine does not preclude the amended preliminary injunctive relief sought by U-Haul. With respect to this issue, it will be recalled that Jartran, prior to the hearing, stipulated to entry of a preliminary injunction enjoining further price comparison ads, and therefore arguably waived the defense for purposes of this hearing.

Dobbs, *Handbook on the Law of Remedies* § 2.4 at 46 (1973), in discussing the doctrine, points out that the defense:

> ... is not a license to destroy the rights of persons whose conduct is unethical. The rule is that unrelated bad conduct is not to be considered against the plaintiff. It is only when the plaintiff's improper conduct is the source, or part of the source ... of his equitable claim, that he

---

**30.** TP1 Vol. VI at 1394.

**31.** James A. Ryder agreed that if the Dodge Jartran truck shown in Appendix D was not more "stable" than the pictured U-Haul truck,

the ad was false and deceptive (TP1 Vol. II at 331). See also TP1 Vol. II at 289–90.

**32.** TP1 Vol. VI at 1330

is to be barred because of this conduct. 'What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.'

The rule expressed in *Markel v. Scovil Mfg. Co.*, 471 F.Supp. 1244, 1255 (W.D.N.Y. 1979), is relevant here as well:

> ... It also is noted that courts are reluctant to apply the unclean hands doctrine in all but the most egregious situations. It will be applied 'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation'.

Jartran's complaints about U-Haul's conduct involve two general matters: First, U-Haul's Moving Guide, published in 1978, and still in circulation, and second, Sales Bulletins issued to U-Haul dealers to motivate their sales efforts.

The Moving Guide predated Jartran's entry into the consumer market and did not refer to Jartran or its products in any way. Also, statements in the guide do not approach the kinds of claims and comparative assertions made in Jartran's ads.

■ The U-Haul Sales Bulletins were directed to its dealers in response to Jartran's advertising statements. This action, taken in part to alleviate problems resulting from the conduct of Jartran, is not the kind of activity that should bar U-Haul from seeking equitable relief. *Natcontainer Corp. v. Continental Can Co., Inc.*, 362 F.Supp. 1094, 1099 (S.D.N.Y.1973); *Hunt v. Easley*, 495 S.W.2d 703, 707 (Mo.App.1973).

The general disfavor of "unclean hands" as a defense; the nature of U-Haul's statements, past or present; the failure of Jartran to demonstrate public dissemination and/or perception of such statements by U-Haul; the lack of claimed damages to Jartran; as well as the public interest aspects of this proceeding under the Lanham Act cause me to find that U-Haul is not precluded by this defense from obtaining further injunctive relief under the circumstances of this case.

## IRREPARABLE INJURY

■ Proof of actual injury is difficult to demonstrate where ads run for different periods of time and not all in the same community. Reasonable inferences from the nature of Jartran's ad campaign and its admitted success, together with the significant market position obtained by Jartran in one year, establish for purposes of this motion that U-Haul's rental transactions and related revenues have been reduced for this reason and apart from the mere fact that Jartran entered the market as a new competitor.

■ The difficulty of measuring actual injury to a party is justification itself for granting injunctive relief, since any remedy at law would be inadequate. In *Ames, supra*, 372 F.Supp. at 13, the Court held:

> ... While plaintiff may ultimately attempt to recover damages under this section by showing actual diversion of trade caused by defendants' representations, the difficult burden which would be imposed upon plaintiffs would render any such recovery speculative or conjectural. Accordingly, we conclude that plaintiff has made the requisite showing of irreparable harm for the entry of injunctive relief under this section and the speculative possibility of the recovery of damages in the future does not bar such relief.

As the *Ames* Court further noted, public interest is involved as well, since:

> Section 43(a) represents 'an affirmative code of business ethics' designed to protect an *honest* competitor in his fair business dealings.

372 F.Supp. at 13 (emphasis in original). See also: *McNeilab, supra*; and *Treasure Valley Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.*, 497 F.2d 203, 218 (9th Cir. 1974), cert. denied, 419 U.S. 999, 95 S.Ct. 314, 42 L.Ed.2d 273 (1974), wherein the Court stated:

> It is true, of course, that injury sometimes occurs whose measure is uncertain, and a *threat of injury* may be quite real

even though the *measure* of the threatened injury defies calculation. And if the threat is real, an injunction may issue even though the injury, if it were to occur, could be measured only by speculation and conjecture. Indeed, one reason for issuing an injunction may be that damages, being immeasurable, will not provide a remedy at law.

I therefore conclude that U-Haul has shown by a preponderance of the evidence that it is likely that Jartran's advertising has caused or will cause a loss of business by U-Haul. *Johnson & Johnson v. Carter-Wallace, supra,* 631 F.2d at 190.

### LACK OF MOOTNESS

The later Jartran ads focused on Jartran's "Big 10"[33] mileage guarantee, and did not include specific claims of stability, design, safety, etc., as did its earlier ads in the spring and summer of 1980.[34] To this extent then, it could be argued that issues concerning such claims are now moot.

█ In finding mootness, a court must be persuaded "that there is no reasonable expectation that it will resume". *McNeilab, supra,* 501 F.Supp. at 523, and cases cited therein.

█ Considering the nature of Jartran's (and Tinsley's) overall ad campaign and its willingness to utilize false and deceptive ads to accomplish an immediate goal, I conclude that these issues are not moot. All of the ad practices of Jartran are " 'capable of repetition' " at its election and without opportunity for prior review by U-Haul, and would evade judicial review perpetually if the Court were to adopt Jartran's position. *McNeilab, supra,* 501 F.Supp. at 523, quoting *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

In summary, for purposes of this Motion for Preliminary Injunction, the Court finds and concludes:

1. Jartran, in its advertisements, made false or deceptive statements about its equipment both standing alone and on a comparative basis with U-Haul's equipment;

2. The Jartran advertisements either deceived or had the tendency to deceive a substantial segment of the consuming public which read such advertisements;

3. The Jartran statements with respect to its equipment and in comparison to U-Haul's equipment were materially false and likely to influence prospective renters of Jartran and U-Haul equipment to U-Haul's disadvantage;

4. U-Haul has been, or is likely to be, injured as a result of such advertising statements;

5. The Jartran and U-Haul equipment and the advertisements at issue are in interstate commerce;

6. U-Haul has shown a combination of probable success on the merits of the case and a strong possibility of irreparable injury. Also, serious questions are raised by U-Haul, and the balance of hardships tips sharply in U-Haul's favor.

The foregoing Opinion in its entirety constitutes the findings of fact and conclusions of law in this proceeding.

Therefore,

IT IS ORDERED that an amended preliminary injunction shall issue forthwith in accordance with the foregoing Opinion.

---

**33.** Appendices E, F, G.

**34.** TPI Vol. XIII at 2577, 2606. The amended preliminary injunction herein will therefore require little affirmative action by Jartran.