METRO MOBILE CTS, INC. and Metro Mobile CTS of Phoenix, Inc., Plaintiffs and Counterdefendants,

v.

NEWVECTOR COMMUNICATIONS, INC. and NewVector Retail Service, Inc., Defendants and Counterclaimants.

No. CIV 85–2109 PHX PGR.

United States District Court, D. Arizona.

Aug. 12, 1986.

R. Stephen Berry, Washington, D.C., Bruce P. White, Phoenix, Ariz., for plaintiffs and counterdefendants.

James R. Martin, Los Angeles, Cal., Michael M. Grant, Phoenix, Ariz., for defendants and counterclaimants.

## MEMORANDUM AND ORDER

ROSENBLATT, District Judge.

### MEMORANDUM

#### I. Background

Defendants/Counterclaimants NewVector Communications, Inc. and NewVector Retail Service, Inc. (NewVector) has applied to this court for preliminary injunctive relief pursuant to section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a), and F.R.Civ.P. 65. They seek to enjoin plaintiff/counterdefendant Metro Mobile CTS, Inc. and Metro Mobile CTS of Phoenix, Inc. (Metro Mobile), from making false and misleading representations about the services offered by Metro Mobile and/or NewVector in comparative advertisements. NewVector also seeks to enjoin Metro Mobile from making false and misleading representation regarding the March 28, 1986 preliminary injunction Order, and to have that Order dissolved. NewVector seeks corrective advertisements, sanctions, and attorneys' fees. The court has jurisdiction pursuant to 15 U.S.C. section 1121 and 28 U.S.C. section 1338(a).

#### II. Comparative Advertisements

NewVector must meet the following criteria to obtain the requested injunctive relief:

1) strong likelihood of success on the merits of the Lanham Act claim;

2) possibility of irreparable harm to NewVector if the relief is not granted;

3) greater hardship to NewVector if the relief is not granted than to Metro Mobile if the relief is granted; and

4) the public interest would be better served if the injunction were granted (where the issue presents a public interest).

*Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980).

#### A. Likelihood of Success on the Merits

■ To meet this test, NewVector must convince the court that it will probably succeed on the merits of its Lanham Act claim at trial or through motion. Section 43(a) of the Lanham Act provides in part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, ... any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. section 1125(a). To prove the Lanham Act claim, NewVector must show that false statements of fact were made; that the statements deceived or have a tendency to deceive their audience and are

likely to influence purchasing decisions; that NewVector is or will likely by injured; and that the falsely advertised goods are in interstate commerce. *U–Haul International, Inc. v. Jartran, Inc.*, 522 F.Supp. 1238, 1241 (D.Ariz.1981), *aff'd.* 681 F.2d 1159 (9th Cir.1982). It is not contested for purposes of this motion that the goods and services at issue were introduced into interstate commerce by Metro Mobile.

■■■ NewVector must prove that Metro Mobile has made false statements about its own products or services. A statement that is literally true but misleading is also actionable under the Lanham Act. *U–Haul, supra,* at 1247. A comparison of products or services that falsely or misleadingly indicates superiority of Metro Mobile services over NewVector services would be actionable. Since there are only two competitors in the relevant market, any false or misleading derogation of NewVector services in a comparative advertisement would necessarily constitute a false or misleading statement about Metro Mobile services.

Metro Mobile asserts that many of the statements challenged by NewVector are merely "puffing" and not actionable under the Lanham Act. "Puffing" has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers. *See Toro Co. v. Textron, Inc.*, 499 F.Supp. 241, 253 n. 23 (D.Del.1980); *U-Haul, supra,* at 1244–45.

■■■ NewVector must prove that the false or misleading statements actually deceive or have a tendency to deceive a substantial segment of cellular telephone buyers and that the deception is material in that it is likely to influence the purchasing decisions. To make these determinations, the court can rely on "market research or consumer surveys" as well as the court's own reaction to the advertisements based on "its own experience and understanding of human nature in drawing reasonable inferences about the reactions of consumers to the challenged advertising."

*McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 525 (S.D.N.Y. 1980). NewVector presented at the hearing the expert testimony and market study of Dr. Yoram Wind. A great deal of time was spent attempting to impeach and rehabilitate Dr. Wind's study. The court admitted Dr. Wind's study into evidence and has considered it in determining whether the statements challenged by NewVector actually deceive or have a tendency to deceive consumers of cellular telephones and whether the statements are likely to influence buying decisions.

NewVector must show that it has been or is likely to be injured as a result of the ads, either by direct diversion of sales from itself to Metro Mobile or through a lessening of goodwill. A much stricter standard, likelihood of irreparable harm, must be met to warrant a preliminary injunction. The court therefore need not independently consider injury to NewVector in determining probable success on the merits of the Lanham Act claim.

■■■ The court's review of the pleadings, exhibits, testimony, and arguments indicates that NewVector challenges twelve comparative statements in Metro Mobile advertisements under the Lanham Act. The court finds a probability of success on the merits of the Lanham Act claim as to some of the challenged statement and not as to others. As to the following challenged statements, the court finds that, based on the evidence presented, there is no probability of success on the merits of the Lanham Act claims and the application for preliminary injunction is denied as to them. The court stresses that it is not making ultimate findings of fact on the merits; inquiry was only directed toward probability of success on the merits at trial. *These findings shall in no way be used as an exoneration of the Lanham Act challenge to these statements.*

"Unlike our competition, we're locally operated, locally managed. ... [O]ur switching center is located here in town."

*"Better Service.* We're a local company run by professionals who care about our

customers. To us, you're not a number. You're a valued client."

The court finds that these statements are not false or misleading comparisons because the great majority of NewVector services are provided in Bellevue, Washington.

"And you can cancel your contract with NewVector with no hassles, no $300 penalty, no fixed high monthly charges—no kidding."

The court finds that this statement is not false or misleading. A customer that cancels NewVector's Frequent Caller Plus Plan could go to either a NewVector or a Metro Mobile plan with no fixed monthly cost. There is no reason to assume that customers would opt for Metro Mobile's Executive Plan.

"We ask you: Would you prefer to do business with the phone company with the best technology, lower rates, and better customer service? Or with someone who can claim none of the above?"

The court finds that the first sentence can be categorized as "puffery." NewVector challenges the second sentence by claiming that it can, in fact, make those claims. The court finds that even if the second sentence is false, it would not have a tendency to deceive consumers.

"You'll get better coverage and higher quality voice transmissions too."

"*Better equipment.* Our equipment gives superior voice transmission and reception because engineers designed it for cellular systems of today and tomorrow...."

These statements were contained in an ad relating specifically to portable phones. The court finds that these statements are not false or misleading when made in reference to portable phones. The court makes no finding as to whether these statements are false or misleading in reference to phones other than portables.

"*Better Coverage.* Metro Mobile's vast system is state-of-the-art Motorola switching equipment, locally situated."

NewVector challenged this statement by introducing evidence that there is a more advanced Motorola switching system, and that therefore Metro Mobile's system is not "state of the art." The court finds that this statement constitutes "puffery."

"On our system, you can hook your portable to a computer system for data transmission. Conference calling, speed dialing, number storage, and more are simple functions of our service."

NewVector claims that this comparative advertisement is misleading in that it suggests that the same features are not available from NewVector. The court finds that the statements are not false, and that even if they may be slightly misleading, they do not have a tendency to deceive consumers, nor are they likely to influence purchasing decisions.

The court finds that there is probable success on the merits of the Lanham Act claim as to certain aspects of the following statements, and no probability of success as to the rest. The application for preliminary injunction is denied as to those aspects for which the court finds no probability of success.

"If you use our competitor's system, however, you're in for some hard times. Lower power, older equipment, and non-state-of-the-art technology make for bothersome transmission problems."

The court finds that the statement suggesting that NewVector operates with "lower power" is false, has a tendency to deceive consumers, and would influence their purchasing decision. The evidence indicates that NewVector is now and was at the time of the advertisement operating at the highest level of power allowed by law. Metro Mobile could not, therefore, operate at a higher power level. The court finds that the statement as to "older equipment" is not false or misleading, and the statement as to "state-of-the-art technology" is "puffery."

"When you take a good look at Metro Mobile's cellular coverage area versus our competition's coverage area, we start looking very big. ... Metro Mobile will keep you talking longer, farther and clearer."

The court finds that this statement falsely and misleadingly insinuates that Metro Mobile's geographic coverage area is larger than NewVector's. The evidence indicates that in fact NewVector's geographic coverage area is larger. The court finds that this misrepresentation has a tendency to deceive customers and is likely to influence their buying decision.

The court finds that there is probable success on the merits of the Lanham Act claim as to the following statements.

"Your conversations will be crystal clear wherever you are. No distortion, buzzes, or drop out. Probably a little better than your home phone, if anything."

"You'll hear no static, no fading, no cut-offs with Metro Mobile's brand new, state of the art Cellular Telephone System. Only consistently clear, clean reception from one end of our cell coverage area to the other."

The court finds that these statements are false and misleading, that they have a tendency to deceive the consumer, and that they are likely to influence the purchasing decision. The evidence indicates that no cellular phone service is crystal clear with no distortion, buzzes, drop outs, static, fading, or cut-offs.

### B. Irreparable Harm

The court has found a probability that NewVector will be able to succeed on the merits of the Lanham Act claim at trial as to several of the challenged statements. In reaching that ruling the court necessarily concluded that the statements will actually deceive or have a tendency to deceive a substantial segment of the market, and that the statements are likely to influence the purchasing decisions of consumers. The court has therefore necessarily found a probability that cellular consumers will be aware of these false or misleading statements. In the March 28, 1986 preliminary injunction Order, the court found: "that the disparaging statements and misrepresentations have caused loss of plaintiffs' customer goodwill and that this loss of

goodwill causes irreparable harm to plaintiff." The court further found that the loss of goodwill constituted irreparable harm because "[t]his case ... involves a brand new technology not yet understood or widely accepted by consumers ... [and] that word-of-mouth advertising is crucial during the start-up period of this industry." The court therefore found irreparable harm from the disparaging comments and misrepresentation. The same factors and analysis applies to the current motion. The damage to NewVector's goodwill as a result of these false or misleading advertisements cannot be calculated. The court's finding that NewVector will likely be irreparably harmed by the false or misleading advertisements also serves to satisfy the Lanham Act's requirement of injury for purposes of the probability of success analysis.

### C. Balance of Hardships

This aspect of the test requires very little consideration. If the injunction is issued, Metro Mobile will lose only the opportunity to continue to publish allegedly false and misleading advertisements, making it further liable for damages under the Lanham Act. If the injunction is not issued, NewVector will be in the position of either tolerating the false and misleading advertisements or taking steps to inform the public as to the truth. The balance of hardships clearly favors a granting of the injunction as to the false and misleading statements.

### D. Public Interest

The Lanham Act involves the public interest of protecting consumers from false and misleading statements which might affect their buying decision to their detriment. *See U-Haul, supra,* 522 F.Supp. at 1242. The public interest clearly favors the enjoining of false and misleading statements.

### III. Preliminary Injunction Ads

NewVector challenges several statements made in Metro Mobile's advertise-

ments regarding the preliminary injunction Order of March 28, 1986. NewVector also alleges that the general tenor of the advertisements suggests that NewVector has engaged in criminal activity. NewVector's challenge is based on section 43(a) of the Lanham Act and on the express provision of the March 28, 1986 Order that neither party manipulate the ruling for competitive advantage. NewVector seeks to have the allegedly false or misleading statements enjoined, to have the March 28, 1986 Order dissolved, and for sanctions against Metro Mobile for violating the March 28, 1986 Order.

■ NewVector alleges that the following statement is misleading:

"NewVector appealed the enforcement of the preliminary injunction and again they lost. You're free to come to the Metro Mobile system."

The court finds that while this statement is technically true, there is a strong probability that the trier of fact will find that it is misleading and deceptive. The obvious purpose of the statement is to mislead consumers into believing that the preliminary injunction is no longer preliminary due to the ruling of the appellate court. The court further finds a probability that NewVector can prove that this statement will actually deceive consumers and that it will affect the buying decision. Based on this finding, and the findings of irreparable harm, balance of hardships, and public interest discussed above, Metro Mobile is enjoined pursuant to the Lanham Act from misleading consumers by suggesting that the injunction ordered by the court is anything but preliminary and subject to a finding on the merits by the trier of fact.

■ NewVector also challenges the statement:

"[I]t [NewVector's Frequent Caller Plus Plan] was such a bad deal that the federal court in Phoenix declared NewVector couldn't hold you to the 12 month contract."

On an abstract level this statement is true. The antitrust laws are based on the premise that anticompetitive conduct is bad for consumers in the long run. This is not, however, the message that the statement conveys, and it is disingenuous for Metro Mobile to suggest that they were appealing to consumers on that level. The court finds a probability that NewVector can prove that the statement is misleading, would deceive consumers, and would affect buying decisions. Based on this analysis, and the analysis of irreparable harm, balancing of interests, and public policy discussed above, Metro Mobile is enjoined from stating or suggesting that this court held that the Frequent Caller Plus Plan was a "bad deal."

■ NewVector also alleges that the preliminary injunction advertisements suggest that NewVector has engaged in criminal activity or that they lied to or duped their customers. The court finds no probability of success on the merits of this claim and therefore denies injunctive relief. The evidence does not show that consumers will interpret the shackles and jail bars as indicating that NewVector engaged in criminal activity. It is the customer that is allegedly "locked up," not NewVector.

■ In ruling on Metro Mobile's motion for preliminary injunction, the court several times cautioned Metro Mobile not to use the court's preliminary injunction ruling for competitive advantage. The court finds that the statements regarding the appeal of the preliminary injunction order and that the Frequent Caller Plus Plan was a "bad deal" violate the court's order that neither party manipulate the court's ruling for competitive advantage. This abuse of the court's order is grounds, distinct and independent from the Lanham Act, to enjoin any future use of these statements in advertising.

### IV. Motion to Dissolve March 28, 1986 Order

NewVector seeks to have the March 28, 1986 Order dissolved because of Metro Mobile's abuse of it and because of Metro Mobile's false and misleading advertisements. Metro Mobile's activities at issue

here do not affect the reasons and justifications underlying the March 28, 1986 Order. Indeed, NewVector's argument for dissolving the March 28, 1986 Order is that Metro Mobile's abuse of it has changed the balance of hardships in such a way that the criteria of a preliminary injunction are no longer met as to the conduct addressed in that Order. The relief granted to NewVector in this Memorandum and Order sufficiently protects its interests such that the balance of hardships regarding the March 28, 1986 Order has not changed sufficiently to warrant dissolution of that Order.

NewVector seeks sanction against Metro Mobile for its violation of the March 28, 1986 Order as well as attorneys fees and costs engendered by bringing the Motion to Dissolve the Preliminary Injunction Order and for Sanctions. The court defers ruling on these requests at this time. There are several requests for sanctions and attorneys fees pending. The court does not consider such motions piecemeal, and will address them all at a later date.

### V. Corrective Advertisements

 NewVector seeks to have the court order Metro Mobile to run corrective advertisements to cure the taint of its false or misleading advertisements. There is precedent for such an order. *See Warner Lambert Co. v. FTC,* 562 F.2d 749, 762–64 (D.C. Cir.1977), *cert. denied* 435 U.S. 950, 98 S.Ct. 1575, 1576, 55˙ L.Ed.2d 800 (1978); *Ames Publishing Co. v. Walker-Davis Publications, Inc.,* 372 F.Supp. 1, 16 (E.D. Pa.1974). The court does not consider this to be an appropriate case for a mandatory injunction requiring corrective advertisements. The court notes, however, that NewVector may use normal media and advertising to correct the false or misleading impressions left by Metro Mobile's ads. NewVector is, of course, cautioned that it may not manipulate this ruling for competitive advantage. The Court does not relish the thought of yet another prolonged bout of preliminary injunction litigation in this case.

### VI. Application for an Order to Show Cause and for Other Relief

Despite Metro Mobile's assurance to the court that no further comparative or preliminary injunction advertisements would run pending the court's ruling on the preliminary injunction, a comparative advertisement ran in the August 4, 1986 issue of *Newsweek* magazine. Metro Mobile now suggests that there may be several more comparative advertisements that will run in future national publications because there was no time to cancel the advertisements. NewVector seeks an order directing Metro Mobile to cease all comparative advertisements until further order of the court, and for an order to show cause why Metro Mobile, its officers, and its counsel should not be held in contempt of court for violating the representations made in open court that no further comparative advertisement would run pending this court's ruling.

The court sees no reason to enter any ruling regarding Metro Mobile's future advertising practices other than this Memorandum and Order. This ruling clearly limits what Metro Mobile may and may not claim in its advertisements pending resolution of this case on the merits. The court will consider any violations of this Memorandum and Order if and when such violations occur.

The court will defer ruling on NewVector's request for sanctions for the violation of the in-court representation that no comparative advertisements would run pending this ruling. The court will set a hearing date in the future to consider all pending requests for sanctions and attorneys' fees.

### ORDER

NewVector's Application for a Preliminary Injunction is granted in part and denied in part. Metro Mobile is enjoined, pending resolution on the merits by the trier of fact, from representing that NewVector's system operates at lower power than Metro Mobile's; that Metro Mobile has a greater geographic coverage area that NewVector; and that Metro Mobile's system provides, crystal clear reception, no

distortion, no buzzes, no drop out, no static, no fading, and no cut-offs. Metro Mobile is further preliminarily enjoined from suggesting that there has been appellate determination on the merits of the preliminary injunction Order of March 28, 1986, and from stating that this court held that the Frequent Caller Plus Plan was a "bad deal." All other requests for injunctive relief are denied. NewVector's request for corrective advertising is denied.

NewVector's Motion to Dissolve the Preliminary Injunction Order of March 28, 1986 is denied. NewVector's Motion for Sanctions against Metro Mobile for violations of the March 28, 1986 Order and request for attorneys' fees is deferred and will be considered later.

NewVector's Application for an Order to Show Cause and for Other Relief is denied insofar as it seeks an order directing Metro Mobile to cease all comparative advertising, and deferred insofar as it seeks contempt sanctions against Metro Mobile, its officers, and its counsel for alleged violations of their representations to the court.

NewVector is ordered to post with the clerk of the court a bond of $5,000 pursuant to F.R.Civ.P. 65(c).