**POM WONDERFUL LLC**

v.

**The COCA COLA COMPANY.**

**CASE NO.: CV 08–06237 SJO (MJWx)**

United States District Court,
C.D. California.

Signed February 19, 2016

Andrew Steven Clare, David Aaron Grossman, Walter Allan Edmiston, Loeb and Loeb LLP, Daniel A. Beck, Adam P. Zaffos, Brooke S. Hammond, Kristina M. Diaz, Matthew David Moran, Roll Law Group PC, Los Angeles, CA, Forrest Arthur Hainline, III, Goodwin Procter LLP, San Francisco, CA, for POM Wonderful LLC.

Jeffrey A. Rosenfeld, Rachel E. K. Lowe, Sean R. Crain, DLA Piper LLP US, Cynthia L. Sands, Martin & Martin LLP, Los Angeles, CA, Sarah E. Zgliniec, Steven A. Zalesin, Travis J. Tu, Jackson Taylor Kirklin, Joshua A. Kipnees, Kathrina J. Szymborski, Rachel B. Sherman, Ryan Sirianni, Vivian Storm, Yiling Chen-Josephson, Patterson Belknap Webb and Tyler LLP, New York, NY, Shani Thome, The Coca-Cola Company, Atlanta, GA, Nelson L. Atkins, Gonzalez Saggio and Harlan

LLP, Pasadena, CA, for The Coca Cola Company.

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** [Docket No. 498]

HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

These matters come before the Court on Plaintiff POM Wonderful LLC's ('POM' or 'Plaintiff') Motion for Partial Summary Judgment ('Motion'), filed on December 1, 2015. Defendant The Coca Cola Company ('Coca-Cola' or 'Defendant') opposed the Motion ('Opposition') on December 18, 2015, and Plaintiff replied ('Reply') on January 5, 2016. The Court heard oral argument from counsel on January 19, 2016. See Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** POM's Motion.

## I. *PROCEDURAL AND FACTUAL BACKGROUND*

### A. *Procedural History*

POM initiated the instant action against Coca-Cola on September 22, 2008, asserting three causes of action associated with Coca-Cola's sales of "Minute Maid® Enhanced Pomegranate Blueberry Flavored 100% Juice Blend" ("the Juice"): (1) False Advertising under section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (2) False Advertising under section 17500 of the California Business and Professions Code; and (3) Statutory Unfair Competition under sections 17200 et seq. of the California Business and Professions Code. (Compl., ECF No. 1.). POM filed a First Amended Complaint ('FAC') on July 27, 2009, asserting the same three causes of action. (First Am. Compl., ECF No. 53.) On March 13, 2013, the Court entered summary judg-

ment in favor of Coca-Cola as to POM's second and third causes of action, finding that these state law claims relating to the naming and labeling of the Juice are expressly preempted by the Federal Food, Drug & Cosmetics Act ("FDCA"). (Order Granting Def.'s Mot. for Summary Judgment, ECF No. 418.) Consequently, only POM's Lanham Act claim remains at issue in this action.

POM's Lanham Act claim centers on allegations that Coca-Cola has made false and/or misleading statements as to the pomegranate and blueberry juice content in the Juice product. (FAC ¶¶ 23–24.) POM alleges that consumers will believe the main ingredients in Coca–Cola's Juice product are pomegranate and blueberry juice, when in fact pomegranate juice ranks third and blueberry juice ranks fifth, by volume. (FAC ¶ 23.)

In the FAC, POM further alleges that it has "invested millions of dollars in researching the nutritional qualities and health benefits of pomegranate juice, an investment that continues to this day," and further alleges that "[a] key element of P[OM's] marketing campaign has been its concentration on the health benefits associated with pomegranates and pomegranate juice . . . ." (FAC ¶¶ 12, 14.) According to POM, this "investment of millions of dollars to research and promote the nutritional qualities and health benefits associated with pomegranate juice" enabled POM to "largely create[ ] the burgeoning market for genuine pomegranate juice that exists today." (FAC ¶ 15.) Indeed, as of the time the FAC was filed, POM alleges that "in only six short years, [its pomegranate juice has] eclipsed all other products in its market segment of super premium juices to take the # 1 spot nationwide in supermarket sales, as well as the # 1 spot in the key geographic regions of Los Angeles, Chicago, New York, among many others."

(FAC ¶ 15.) POM further alleges that its "annual supermarket sales have, incredibly, gone from zero to well over $70 million in that same period." (FAC ¶ 15.)

POM identifies Coca–Cola in the FAC as one of several "[u]nscrupulous competitors [that] have set out to cash in on [POM's] success" and to profit from the fact that, "[d]ue to POM's marketing efforts and funding of research, ... many consumers now associate pomegranate juice with certain nutritional qualities and health benefits." (FAC ¶ 16.) POM claims that Coca–Cola's Juice label contains many misleading elements not required by federal or state regulation, by, for example, naming the Juice "Pomegranate Blueberry" and juxtaposing this brand name with a picture of a pomegranate and other fruits when in fact the Juice is primarily composed of cheaper apple and grape juices. (FAC ¶¶ 19–20, 23.) As a result, POM alleges that Coca–Cola "wrongfully misleads and deceives consumers, and tricks them into believing that they are getting a similar product [to POM's] (i.e., all natural pomegranate blueberry juice with all of its associated health benefits) for a lower price, when in fact they are getting a very different product primarily containing apple juice and grape juice." (FAC ¶ 25.)

Coca–Cola filed its Answer to the FAC ("Answer") on September 30, 2009, in which it asserts a number of affirmative defenses. (Answer to Am. Compl., ECF No. 70.) At issue in the instant Motion is the thirty-forth affirmative defense, in which Coca–Cola alleges that "P[OM]'s claims against [Coca–Cola] are barred, in whole or in part, due to unclean hands." (Answer 12–13.) In support of this affirmative defense, Coca–Cola offers the following:

> Plaintiff has engaged in naming, labeling, marketing and advertising conduct designed to deceive consumers about its products. For instance, Plaintiff describes its Pomegranate Blueberry juice product as Pomegranate Blueberry 100% Juice, yet at the time it filed its Complaint, Plaintiff's product contained other ingredients, including plum, pineapple, apple, and blackberry juices from concentrates and natural flavors. In addition, Plaintiff's name, label, advertisements, website, and promotions of Plaintiff's pomegranate juice products—including its 100% pomegranate juice product and its 100% juice blend products, such as its Pomegranate Blueberry 100% Juice product—are designed to give consumers the false impression that these juices are fresh-squeezed, and not "from concentrate." In addition, Plaintiff alleges that it "largely created the burgeoning market for genuine pomegranate juice," by educating the public about health claims through its advertisements and/or promotions. Many of Plaintiff's health claims are not supported by any substantial scientific evidence. Indeed, by Plaintiff's own admission, many of its advertising claims constitute mere "puffery." Thus, Plaintiff is seeking to capitalize in this case on the fruits of its own misconduct in the form of misleading labeling and advertising.

(Answer 12–13.) Thus, Coca–Cola's unclean hands defense alleges three distinct forms of misconduct: (1) that POM's juice product contained ingredients other than pomegranate and blueberry notwithstanding being labeled "Pomegranate Blueberry 100% Juice" ("ingredient claim"); (2) that POM gave the false impression that its juices were "fresh-squeezed" rather than "from concentrate" ("'from concentrate' claim"); and (3) that POM's health claims about its pomegranate products are "not supported by any substantial scientific evidence" ("health advertisement claim"). (Answer 12–13.)

By way of a motion filed on November 3, 2009 ("Motion to Strike"), POM moved to strike the portion of Coca–Cola's unclean hands defense alleging that POM's juice products "are designed to give consumers the false impression that these juices are fresh-squeezed, and not 'from concentrate,'" as POM's "FAC says nothing about fresh-squeezed juice or juice concentrate." (Mot. to Strike Unclean Hands Allegations 1, ECF No. 103.) The Court denied POM's Motion to Strike on December 14, 2009, finding that Coca–Cola had alleged "that Plaintiff has employed the very deceptive marketing tactics that Plaintiff alleges Defendant has employed," and that "[i]t is not necessary that a plaintiff engage in precisely the same behavior as it alleges in the complaint, in order for a defendant to state a valid unclean hands affirmative defense." (Order Den. Mot. to Strike 2, ECF No. 143.)

On June 5, 2015, POM moved for leave to file a Second Amended Complaint ("SAC"), claiming that the SAC would "simplif[y] the claims" and "focus[ ] on Coca–Cola's false labeling and packaging, and suing for .that deception only under the Lanham Act." (Mot. for Leave to File SAC, ECF No. 449.) The proposed SAC sought to remove POM's original allegations concerning the purported health benefits of pomegranate juice and the importance of POM's health claims in creating consumer demand for its products. (Mot. for Leave to File SAC, Ex. 1.) POM filed its motion for leave to file an SAC after the United States Court of Appeals for the District of Columbia largely denied POM's petition for review of an order by the United States Federal Trade Commission ("FTC") finding that many of POM's advertisements contained misleading or false claims about POM's juice products and ordering POM and certain of its executives to cease and desist from making any claim about the "health benefits" of a food, drug, or dietary supplement unless the represen-

tation is non-misleading and supported by "competent and reliable scientific evidence." *See POM Wonderful, LLC, et al. v. FTC*, 777 F.3d 478 (D.C.Cir.2015); *POM Wonderful LLC*, No. 9344, Final Order (U.S. Fed. Trade Comm'n Jan. 10, 2013) (FTC Final Order).

The Court denied POM's motion for leave to file an SAC on July 7, 2015, finding that POM had failed to provide good cause for modifying the Court's May 21, 2015 scheduling order. (Order Den. Pl.'s Mot. for Leave to File SAC, ECF No. 463.) The FAC therefore remains the operative pleading in this action.

## II. *DISCUSSION*

In the Motion, POM raises several arguments why the Court should grant partial summary in favor of POM and preclude Coca–Cola from presenting evidence on Coca–Cola's unclean hands defense at trial. First, POM argues that the purported misconduct cited by Coca–Cola is not "directly related" to POM's Lanham Act claim that Coca–Cola deceives consumers into believing that the Juice primarily contains pomegranate and blueberry juices, rending the equitable doctrine of unclean hands inapplicable. (*See generally* Mot. 9–10, ECF No. 498.) Second, POM argues that, even assuming Coca–Cola's unclean hands defense is "directly related" to POM's Lanham Act claim, POM is entitled to partial summary judgment because Coca–Cola lacks clear and convincing evidence of "egregious misconduct" to support its affirmative defense of unclean hands based on POM's health advertising. (Mot.10–15.)

Coca–Cola responds that summary judgment must be denied because there is a sufficient nexus between POM's false advertising claims and its allegedly deceptive health advertisements and because there remains a genuine dispute regarding whether POM's conduct with respect to its

health advertisements is inequitable. (*See generally* Opp'n 11–19, ECF No. 507.)

## A. Legal Standards
### 1. Summary Judgment

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed.R.Civ.P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249, 106 S.Ct. 2505. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### 2. The Defense of Unclean Hands

"Unclean hands is a defense to a Lanham Act infringement suit." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.1987). Though equitable in nature, the unclean hands doctrine bars claims for money damages as well as those for equitable relief. *See Ample Bright Dev. v. Comis Int'l*, 913 F.Supp.2d 925, 940 n. 69 (C.D.Cal.2012). The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the

right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir.1989).

To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) "that the plaintiff's conduct is inequitable;" and (2) "that the conduct relates to the subject matter of [the plaintiff's] claims." *Fuddruckers,* 826 F.2d at 847 (citing *CIBA–GEIGY Corp. v. Bolar Pharm.,* 747 F.2d 844, 855 (3d Cir.1984)); *see also Traffic-School.com, Inc. v. Edriver, Inc.,* 653 F.3d 820, 833 (9th Cir.2011) (holding that a defendant must demonstrate that an unclean hands defense applies with "clear, convincing evidence").

With respect to the first requirement, "[o]nly a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pfizer, Inc. v. Int'l Rectifier Corp.,* 685 F.2d 357, 359 (9th Cir.1982).

With respect to the second requirement, although "precise similarity" between the plaintiff's inequitable conduct and the plaintiff's claims is not required, the misconduct "must be 'relative to the matter in which [the plaintiff] seeks relief.'" *Pom Wonderful LLC v. Welch Foods, Inc.* ("*Welch*"), 737 F.Supp.2d 1105, 1110 (C.D.Cal.2010) (alterations in original) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). Stated more clearly, the defense should only be applied "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *U–Haul Int'l, Inc. v. Jartran, Inc.,* 522 F.Supp. 1238, 1254 (D.Ariz.1981), *aff'd,* 681 F.2d 1159 (9th Cir. 1982) (citing *Ames Publ'g Co. v. Walker-Davis Publ'ns, Inc.,* 372 F.Supp. 1, 13–15 (E.D.Pa.1974)). Thus, "the relevant inquiry is 'not [whether] the plaintiff's hands are dirty, but [whether] [s]he dirtied them in acquiring the right [s]he now asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants.'" *Welch,* 737 F.Supp.2d at 1110 (quoting *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985)). Such a limitation is required because "[t]he unclean hands maxim is not a search warrant authorizing the defendant to probe into all the possible types of inequitable conduct ever engaged in by the plaintiff. Plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation." 6 McCarthy on Trademarks and Unfair Competition (4th ed.2010) § 31:48.

Even if a defendant satisfies both prongs, however, courts must not automatically apply the doctrine of unclean hands and "permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law." *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387, 64 S.Ct. 622, 88 L.Ed. 814 (1944). "Rather, determining whether the doctrine of unclean hands precludes relief requires balancing the alleged wrongdoing of the plaintiff against that of the defendant, and 'weigh[ing] the substance of the right asserted by [the] plaintiff against the transgression which, it is contended, serves to foreclose that right.'" *Northbay Wellness Grp., Inc.,* 789 F.3d 956, 960 (9th Cir.2015) (quoting *Republic Molding Corp. v. B.W. Photo Utils.,* 319 F.2d 347, 350 (9th Cir. 1963)). In addition, "the clean hands doctrine should not be strictly enforced when to do so would frustrate a substantial public interest." *EEOC v. Recruit U.S.A., Inc.,* 939 F.2d 746, 753 (9th Cir.1991).

B. *Coca–Cola's Unclean Hands Defense Regarding POM's Health Advertising*

POM argues that Coca–Cola cannot raise a triable issue in support of its unclean hands defense regarding POM's health advertising because (1) this advertising does not "directly relate" to Coca–Cola's alleged false advertising of the Juice's products' pomegranate and blueberry content; and (2) Coca–Cola lacks clear and convincing evidence of "egregious conduct" in connection with POM's health advertising. (Mot.9–15.) The Court addresses these two prongs of the doctrine of unclean hands in turn.

1. *Whether Coca–Cola's Unclean Hands Claims Are Sufficiently Related to POM's False Advertising Claims*

A central dispute in the instant Motion concerns whether Coca–Cola's health advertising claim is sufficiently related to POM's false advertising claim to warrant application of Coca–Cola's unclean hands defense. Although the contours of this element of the doctrine of unclean hands and its proper place in the context of the issues presented here are largely unexplored, the Court is not left without guidance, as two earlier cases in this district involving POM have addressed a closely related issue. Careful analysis of these two cases is helpful in determining whether Coca–Cola's health advertisement claim is sufficiently related to POM's false advertising claim to withstand summary judgment.

In the first case, *Pom Wonderful LLC v. Welch Foods, Inc.,* the district court denied defendant Welch's motion for summary judgment on the issue of Welch's unclean hands defense in part because certain of Welch's claims were not "sufficiently related to Pom's claims in the lawsuit." 737 F.Supp.2d 1105, 1110–1111 (C.D.Cal. 2010). In particular, Judge Matz found that the following three claims—(1) that POM deceives consumers by obscuring the term "from concentrate" on its bottles and in its advertisements; (2) that POM's juice blends contain water, an undisclosed ingredient; and (3) that POM uses an advertisement that purports to show POM's juice going straight from whole fruit into bottles, when in fact it goes through many steps prior to being bottled—are in essence false advertisement claims regarding whether POM's juice is "from concentrate," and are not "directly related to P[OM]'s claims that Welch misleads consumers into believing that its juice blend contains more pomegranate juice than it actually does by including the word 'pomegranate' in the name and prominently depicting a pomegranate in the label." *Id.* The court concluded that:

> Pom's entire theory of how Welch deceives consumers is premised on its contention that consumers view pomegranate juice as "superior" to the "cheap" filler juices (i.e., grape and apple) that comprise the majority of Welch's WGP product. Welch's allegations regarding Pom's marketing of its juice as not from concentrate, while falling within the broad category of "consumer deception," are premised on a different deception, different factual allegations, and different types of advertisements. The relationship between these allegations and Pom's claims is too tenuous to support an unclean hands defense.

*Id.* at 1111.[1] Importantly, however, the court did **not** hold that Welch's two re-

---

[1] Another reason why Judge Matz found that Welch could not assert the three claims described above as part of its unclean hands defense is that Welch failed to plead them as part of its affirmative defenses. *Welch,* 737 F.Supp.2d at 1111 ("A second reason why Welch cannot now assert the three claims described above as part of its unclean hands defense is that Welch did not plead them as part of its affirmative defense.").

maining claims—(1) that POM's 100% Pomegranate Juice product contains undisclosed trace elements of "elderberry;" and (2) that POM's "Pom Blueberry," "Pom Cherry," and "Pom Tangerine" products contain juices not disclosed in the label—were "too tenuous" to support an unclean hands defense. *Id.* at 1112. Instead, the court found that these claims "bear a closer relation to the claims P[OM] asserts against Welch ..." *Id.* Also important is that the court did not have occasion to consider whether an unclean hands defense premised on the sufficiency of the scientific evidence underlying POM's health advertisements would be "sufficiently related" to an allegation regarding the ingredients listed in and displayed on Welch's juice product.

In the second case, *Pom Wonderful LLC v. Tropicana Products, Inc.* ("*Tropicana*"), the district court denied POM's motion in limine seeking to preclude Tropicana from asserting an unclean hands defense based on: (1) POM's failure to disclose the existence of elderberry juice in its 100% pomegranate juice product; (2) POM's failure to disclose the existence of water in its juices; (3) POM's failure to identify the presence of other juices in its named juices; (4) POM's omission of the words "from concentrate" from its print and billboard advertising and making these words difficult to read on its bottles; and (5) POM's "Tree to Bottle" video. Order re Mots. in Limine, No. CV 09–00566

DSF (CTx), at *3–*4 (C.D.Cal. Nov. 1, 2010). Specifically, the court noted that it "interprets the affirmative defense of unclean hands more broadly than [the court] did in [*Welch*]," specifically construing Tropicana's defense against POM as "analogous or 'relat[ing] to the subject matter of [POM's]" claim against Tropicana, namely that Tropicana's naming and labeling of its juice misled consumers." *Id.* at *4. Finding that factual issues regarding the applicability of this defense remain, Judge Fischer thus concluded that "to the extent that Tropicana seeks to introduce evidence alleging that P[OM]'s naming and labeling has misled consumers, it will be admitted." *Id.* Judge Fischer also found that "POM has put at issue the supposed health benefits of pomegranate juice," and permitted Tropicana's expert to opine on the science of those alleged health benefits. *Id.* at *2. Again, however, the court in *Tropicana* did not expressly rule on whether an unclean hands defense premised on the sufficiency of the scientific evidence underlying POM's health advertisements would be "sufficiently related" to an allegation regarding the ingredients listed in and displayed on Tropicana's juice product.[2]

The question this Court must decide—which was not decided in either *Welch* or *Tropicana*—is thus whether POM's false advertising claims against Coca–Cola are sufficiently related to Coca–Cola's claim that POM's health advertisements lacked

---

2. POM directs the Court to a portion of the pretrial conference in *Tropicana* in which Judge Fischer stated that "[she] d[id not] think [health claim advertising] relates to an unclean hands defense." (Reply 3, ECF No. 519.) The Court has reviewed the transcript of the pretrial conference in *Tropicana*, and finds that Judge Fischer's statements were made in response to POM's counsel questioning whether an FDA warning letter and evidence of an FTC investigation into POM's advertising could be introduced at trial to bolster the testimony of Tropicana's damages

expert, rather than in the context of determining whether, in the abstract, an unclean hands defense premised on an alleged lack of substantiation underlying POM's advertising would be sufficiently related to POM's Lanham Act claim to satisfy the relationship prong of the doctrine of unclean hands. (*See* Decl. Steven A. Zalesin in Supp. Opp'n ("Zalesin Decl."), Ex. 47 at 18–20, ECF No. 507–1.) Indeed, as Tropicana did not raise such a defense in its answer, Judge Fischer had no occasion to consider such a question.

sufficient scientific evidence.[3] Although "precise similarity" between the plaintiff's inequitable conduct and the plaintiff's claims is not required, the misconduct "must be 'relative to the matter in which [the plaintiff] seeks relief.'" *Welch*, 737 F.Supp.2d at 1110 (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). The relevant inquiry "is not [whether] the plaintiff's hands are dirty, but [whether] he dirtied them in acquiring the right he now asserts." *Ellenburg*, 763 F.2d at 1097 (internal quotation marks omitted).

POM urges the Court to find that Coca–Cola's unclean hands defense must "directly relate" to POM's Lanham Act claim, rather than "an amorphous and (lesser) 'nexus' standard" allegedly proposed by Coca–Cola. (Mot. 9; Reply 1–2.) In support of this argument, POM directs the Court to the following language in *Welch*: "[T]he misconduct that forms the basis for the unclean hands defense [must be] directly related to plaintiff's use or acquisition of the right in suit.'" *Welch*, 737 F.Supp.2d at 1110 (quoting *Specialty Minerals, Inc. v. Pluess–Staufer AG*, 395 F.Supp.2d 109, 113 (S.D.N.Y.2005)). "Direct relation," however, is not the standard applied in the Ninth Circuit. Instead, Ninth Circuit precedent merely requires that a defendant in a Lanham Act case demonstrate "that the conduct relates to the subject matter of its claims," for "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit **as to the controversy at issue.**" *Fuddruckers*, 826 F.2d at 847 (emphasis in original) (quoting *Ellenburg*, 763 F.2d at 1097); *see also Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir.2002) (quoting *Fud-*

*druckers* for the proposition that, for a trademark defendant to prevail on an unclean hands defense, it "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims"); *TrafficSchool.com*, 653 F.3d at 833 (quoting *Japan Telecom* for the proposition that a defendant in an false advertising case must prove that plaintiff's conduct "relate[d] to the subject matter of" their false advertising claim). The Court declines the opportunity to disturb this longstanding precedent.

■■■ Even if the standard were "direct relation," however, the Court would nevertheless find that Coca–Cola's allegations regarding POM's health advertisements are directly related to POM's Lanham Act claim against Coca–Cola. Here, POM's false advertising claims against Coca–Cola are premised on the perceived health benefits of pomegranates and pomegranate juice vis-a-vis other fruit juices such as those contained in Coca–Cola's Juice product. (*See* FAC ¶¶ 12–16.) Indeed, POM admits that a "key element" of its "marketing campaign has been its concentration on the health benefits associated with pomegranates and pomegranate juice, and its emphasis on the high level of antioxidants contained in POM WONDERFUL® brand juice." (FAC ¶ 14.) POM further alleges that "[t]hrough its investment of millions of dollars to research and promote the nutritional qualities and health benefits associated with pomegranate juice, P[OM] largely created the burgeoning market for genuine pomegranate juice that exists today." (FAC ¶ 15.) Moreover, POM alleges that "[d]ue to [its] marketing efforts and funding of research, and substantial research not funded by POM, many consumers now associate pomegranate juice with certain nutritional qualities and

---

**3.** The *Welch* and *Tropicana* cases were decided well before the Court of Appeals for the D.C. Circuit issued its opinion in *POM Won-* *derful, LLC, et al. v. FTC*, 777 F.3d 478 (D.C.Cir.2015).

health benefits," but that "[u]nscrupulous competitors [such as Coca–Cola] have set out to cash in on P[OM]'s success by marketing and selling to consumers products labeled as 'pomegranate juice,' that in fact contain little or no actual pomegranate juice." (FAC ¶ 16.) POM thus alleges that through its labeling and advertising, "Coca Cola wrongfully misleads and deceives consumers, and tricks them into believing that they are getting a similar product (*i.e.*, all natural pomegranate blueberry juice **with all of its associated health benefits**) for a lower price, when in fact they are getting a very different product primarily containing apple juice and grape juice." (FAC ¶ 25 [emphasis supplied].) [4]

Thus, this issue is an easy call. "[POM's] misconduct which brings the clean hands doctrine into operation ... relate[s] directly to the transaction concerning which the complaint is made, i.e., it ... pertain[s] to the very subject matter involved and affect the equitable relations between the litigants." *Gen–Probe, Inc. v. Amoco Corp., Inc.*, 926 F.Supp. 948, 952 (S.D.Cal.1996) (quoting *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*, 227 Cal.App.2d 675, 728–29, 39 Cal.Rptr. 64 (1964)). POM alleges that Coca–Cola's labeling and advertising of its Juice product misleads consumers because consumers mistakenly believe they are purchasing a natural pomegranate blueberry juice with all of its **associated health benefits** when in fact they are purchasing a product primarily containing "less healthy" juices such as apple and grape. (FAC ¶¶ 12–16, 25–27 [emphasis supplied].) Coca–Cola asserts a defense of unclean hands based on allegations that the very health claims either manufactured or referenced by POM are not supported by substantial scientific evidence. (Answer 12–13.) The misconduct cited by Coca–Cola is directly related to the conduct POM alleges has harmed its business, goodwill, and relationship with its customers, all of which POM alleges was largely created through its advertising campaign touting the health benefits of pomegranate juice. Accordingly, Coca–Cola's health advertisement claim is sufficiently related to POM's false advertising claims to be properly invoked as an affirmative defense.

**4.** At the hearing on the instant Motion, POM argued that recitations in the FAC to the advertised "health benefits" of pomegranates and pomegranate juice are distinct from claims that pomegranates and pomegranate juice could treat, prevent, or reduce the risk of diseases, and that, as a result, any evidence of wrongdoing with respect to the substantiation (or lack thereof) underlying POM's health advertisements is insufficiently related to POM's Lanham Act claim to support the application of unclean hands. (*See, e.g.,* Tr. of Proceedings ("Tr.") at 19:23–20:7 ("I don't think this meets the directly relatedness even under the case you cite because there is a well-recognized, oceanic difference between making a claim that something's generally healthy, ... and claims—these very discrete claims that a product treats, prevents or cures disease.").) The Court disagrees. POM has put consumers' expectations regarding the perceived health benefits of pomegranates and pomegranate juice directly at issue in this litigation, both generally and more specifically with respect to purported therapeutic benefits. First, POM's allegation that Coca–Cola's labeling and advertising misleads consumers as to the "associated health benefits" of pomegranates and pomegranate juice encompasses specific health benefits advertised by POM, including the efficacy of POM's pomegranate products with regard to heart disease, prostate cancer, and erectile dysfunction. (FAC ¶¶ 12–16, 25–27.) Moreover, POM's damages expert has opined that POM's publication of studies touting specific health benefits of pomegranates and pomegranate juice are "must have" products for certain consumers and therefore feature heavily into his forecast regarding POM's "but for" sales. The Court is not persuaded by POM's attempts to distance itself from its prior litigation strategy.

### 2. *Application of the Evidentiary Standard for Unclean Hands Defense*

POM further contends that, even assuming Coca–Cola's allegations are sufficiently related to POM's claims, Coca–Cola "certainly cannot satisfy the heightened legal standard for the application of any unclean hands defense" because the defense is "very disfavored" and because POM has not engaged in **"egregious conduct"** sufficient to warrant the application of the defense. (Mot.2.) Specifically, POM argues that Coca–Cola has failed to meet its burden of proving that POM's conduct is inequitable because Coca–Cola has not made an affirmative showing that POM's health advertisements are actually false—for example, by offering evidence affirmatively disproving the truth of POM's purported health claims. (Mot.10–15.) Even more particularly, POM contends Coca–Cola has failed to meet its burden because it has not (1) presented any expert opinion on POM's health advertising; (2) presented any expert opinion affirmatively disputing the claimed benefits of pomegranate juice; or (3) introduced any evidence of harm suffered as a result of the alleged misleading health advertising. (Mot.10–15.)

■ As a preliminary matter, the Court must determine whether the unclean hands doctrine requires Coca–Cola to prove by clear and convincing evidence that POM engaged in "egregious conduct" with respect to its health claims. Neither Supreme Court nor Ninth Circuit precedent requires that defendants prove that a plaintiff's conduct was **"egregious;"** if by "egregious," POM means that Coca–Cola must prove that POM's health claims were literally false. These authorities hold that a defendant can succeed on an unclean hands defense if it proves that a plaintiff engaged in a "willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *Precision Instr. Mfg. Co.*, 324 U.S. at 815, 65 S.Ct. 993; *see also Dollar Sys.*, 890 F.2d at 173 ("The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.") (citation omitted). POM's citation to *U–Haul Int'l, Inc. v. Jartran, Inc.*, a case in which a district court observed that "courts are reluctant to apply the unclean hands doctrine in all but the most egregious situations," does not disturb this precedent. 522 F.Supp. 1238, 1255 (D.Ariz.1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982).[5]

■ POM is correct, however, insofar as it argues the party asserting the defense of unclean hands must ultimately prove by clear and convincing evidence "wrongfulness, willfulness, bad faith, or gross negligence" on the part of the plaintiff. *Pfizer*, 685 F.2d at 359. At the summary judgment stage, however, a defendant need only demonstrate the existence of a genuine, material dispute regarding whether plaintiff engaged in inequitable conduct. *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505. Coca–Cola offers sev-

---

**5.** In *Tropicana,* although Judge Fischer used the word "egregious" in her instruction to the jury defining inequitable conduct, she did **not** require the jury to find that POM likewise violated a false advertising statute in order for Tropicana to prevail on its affirmative defense of unclean hands. *See* Reporter's Daily Tr. of Jury Trial Day 7, *POM Wonderful, LLC v. Tropicana Prods., Inc.,* No. CV09–566–DSF(Ctx), 150–151 (C.D.Cal. Nov. 12, 2010), ECF No. 257 ("Conduct that is inequitable means misconduct which is sufficiently egregious, that after considering the public's interest in preventing misleading advertisements, and after considering the merits of POM[ ]'s false advertising claims against Tropicana, POM[ ]'s claims should be barred outright because of its conduct.").

eral reasons why such a genuine factual dispute exists.

Coca–Cola first argues that a finding by the Federal Trade Commission ("FTC") that POM violated the Federal Trade Commission Act ("FTC Act") by making false and misleading claims about the health benefits of several of POM's pomegranate products is sufficient, standing alone, to demonstrate that POM engaged in inequitable conduct. (Opp'n 13–14.) On May 17, 2012, Administrative Law Judge ("ALJ") D. Michael Chappell issued an Initial Decision ("Initial Decision") wherein he made a number of factual findings regarding whether POM's health claims were adequately substantiated. (See Decl. Brooke S. Hammond in Supp. POM's Mot. in Limine No. 2, Ex. B, ECF No. 545.) On January 10, 2013, the FTC issued an opinion ("FTC Opinion") in which it found that POM and its officers violated Sections 5(a) and 12 of the FTC Act by disseminating advertising and promotional materials representing that consumption of certain doses of pomegranate juice products treats, prevent, or reduces the risk of heart disease, prostate cancer, or erectile dysfunction ("ED") without having a reasonable basis to substantiate these claims. (Zalesin Decl., Ex. 9.) On January 30, 2015, the United States Court of Appeals for the D.C. Circuit issued an opinion largely denying POM's petition for review of the FTC Opinion. See POM Wonderful, LLC, et al. v. FTC, 777 F.3d 478 (D.C.Cir.2015). Coca–Cola contends that these "are precisely the type of statutory violations that renders a party's hands unclean," and POM "should not be permitted to recover on the theory that, but for Coca–Cola's sales of the Juice, P[OM]'s fraud would have been even more successful than it was." (Opp'n 14.)

POM responds that "Coca–Cola cannot rely upon the rulings in the FTC proceeding," as this opinion "has a different evidentiary standard (lack of scientific substantiation) that Coca–Cola is not permitted to use here as a private party." (Mot.11.) Instead, according to POM, "Coca–Cola is required to present affirmative evidence that POM's advertising is actually false." (Mot.11.) Thus, POM suggests that Coca–Cola must prove that POM violated the Lanham Act in order to avail itself of an unclean hands defense. (Mot.12–13.) Indeed, at the hearing on the instant Motion, POM argued at several points that Coca–Cola "ha[s] to prove [a] Lanham Act [claim] plus something else." (Tr. at 40:9–11; see also Tr. at 19:9–16 ["The unclean hands defense is supposed to be a narrower, more arduous, more rigorous requirement then certainly what was misstated by Coca–Cola and, frankly, more rigorous than a Lanham Act claim which they didn't make."]; Tr. at 43:20–44:3 ["MS. DIAZ: Yes, Your Honor, we submit they actually have to do more ... THE COURT: And to do more, Lanham Act plus something else? MS. DIAZ: Yes, Your Honor ..."].)

■ Contrary to POM's suggestion, however, neither the Ninth Circuit nor any other authority located by the Court requires that a defendant prove that the plaintiff violated the same law or statute that it has accused the defendant of violating.[6] See Hana Fin., Inc. v. Hana Bank, No. CV 07–1534 PA(JWJx), 2011 WL 2581458, at *5 (C.D.Cal. June 29, 2011)

---

**6.** A striking number of cases relied upon by POM in its Motion regarding substantiation address the sufficiency of making out an affirmative Lanham Act claim, rather than proving an unclean hands defense. See, e.g., Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 n. 4 (9th Cir.2002) (to prove a Lanham Act violation, plaintiff must show that "defendant made a false statement either about the plaintiff's or its own product"); Caltex Plastics, Inc. v. Shannon Packaging Co., No. 2:13–CV–06611 RSWL, 2015 WL

(concluding that the doctrine of unclean hands barred plaintiff's trademark infringement suit where defendant proved that plaintiff made ·a false representation to the defendant that their services would not overlap); *Hall v. Wright,* 240 F.2d 787, 795 (9th Cir.1957) ("Conduct which may be found to call for application ·of the doctrine of unclean hands may or may not constitute unfair competition under the substantive law of California."). Rather, a defendant must merely prove that the plaintiff engaged in "inequitable" conduct that is sufficiently related to the subject matter of the plaintiff's claims. *Fuddruckers,* 826 F.2d at 847. The Court therefore agrees with Coca–Cola that "no reverse Lanham Act Claim [is] required" in order to make out an unclean hands defense. (Tr. at 63:1–12.)

■ "Well-accepted general principles of equity support [the] contention that a statutory violation gives a party unclean hands." *Metro Motors v. Nissan Motor Corp.,* 339 F.3d 746, 750–51 (8th Cir.2003) (collecting cases). Courts in the Ninth Circuit follow this precept. *Adler v. Fed. Republic of Nigeria,* 219 F.3d 869, 873, 877–78 (9th Cir.2000) (holding that participation in a scheme to steal from the Nigerian government and bribe Nigerian officials in violation of California law and the FCPA established plaintiff's unclean hands); *Yamamoto & Co. (Am.), Inc. v. Victor United, Inc.,* No. 77–1143–FW, 1982 WL 52121, at *16 (C.D.Cal. May 26, 1982) (holding that false statements and omissions made in connection with a trademark application "constitute direct statutory violations and unclean hands"). Indeed, because "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue," Coca–Cola need only prove that POM engaged in deceitful conduct to acquire the business and market share it alleges has been lost to Coca–Cola. *Ellenburg,* 763 F.2d at 1097 (quoting *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387, 64 S.Ct. 622, 88 L.Ed. 814 (1944)). A finding by the ALJ that a number of POM's ·advertisements and promotional materials contain "deceptive claims" regarding the health benefits of POM's pomegranate juice products is sufficient to create a genuine issue as to whether POM engaged in deceitful conduct in acquiring its customer base. That Coca–Cola, as a private party, is unable to bring an independent cause of action under the FTC Act is immaterial because Coca–Cola is not bringing such a claim, but is instead seeking to offer POM's statutory violation as evidence that POM engaged in inequitable conduct.[7]

---

3407889, at *8 (C.D.Cal. May 27, 2015) (denying plaintiff's Lanham Act claim in the absence any admissible evidence that defendant's claims were actually false); *Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 119 (2d Cir.1984) ("[E]ach plaintiff bears the burden of showing that the challenged advertisement is false and misleading ... not merely that it is unsubstantiated by acceptable tests or other proof."); *U–Haul Int'l, Inc. v. Jartran, Inc.,* 522 F.Supp. 1238, 1248 (D.Ariz.1981) *aff'd,* 681 F.2d 1159 (9th Cir.1982) ("Jartran did not have to prove the truth of its asserted product claims; the burden in this regard rested on U–Haul, and it could not sustain its burden of persuasion by its repeated assertions (and proof) that Jartran had done little, if any, testing of Jartran trucks or trailers, and no comparative testing of U–Haul products."); *Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms., Inc.,* 19 F.3d 125, 129 (3d Cir.1994) ("A plaintiff must prove that the claim is false or misleading, not merely that it is unsubstantiated.").

7. The cases cited by POM on this point are readily distinguishable. The first case, *Immuno Vital, Inc. v. Golden Sun, Inc.,* involves a defendant seeking to affirmatively prove as part of its unclean hands defense that the plaintiff's conduct violated the Federal Food, Drug and Cosmetic Act ("FDCA") in the absence of a finding by the Food and Drug

POM further contends that Coca–Cola cannot rely upon the FTC Opinion to prove POM's alleged misconduct because a court "may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a case then before it." (Reply 3–4 [citing *M/V Am. Queen v. San Diego Marine Constr.*, 708 F.2d 1483, 1491 (9th Cir.1983) ].) This argument is unpersuasive, and the Court finds that the ALJ's Initial Decision and FTC Opinion are admissible both under Federal Rule of Evidence 201(b) and Federal Rule of Evidence 803(8)(A)(iii). Federal Rule of Evidence 201(b) ("Rule 201") permits a court to judicially notice an adjudicative fact that is not subject to reasonable dispute either because it is "generally known within the trial court's jurisdiction" or because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). "The records and reports of administrative bodies are proper subjects of judicial notice, as long as their authenticity or accuracy is not disputed." *Daghlian v. DeVry Univ., Inc.*, 461 F.Supp.2d 1121, 1146 (C.D.Cal.2006) (citation omitted); *see also Lundquist v. Continental Cas. Co.*, 394 F.Supp.2d 1230, 1243 (C.D.Cal.2005) (" 'A court may take judicial notice of records and reports of administrative bodies,' such as notices and opinion letters issued

by" an administrative agency (citation omitted)). Indeed, the advisory notes to Rule 201 expressly contemplate taking judicial notice of facts determined by courts or agencies concerning the parties before it: "When a court or an agency finds facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent—the court or agency is performing an adjudicative function, and the facts are conveniently called adjudicative facts." Fed.R.Evid. 201 advisory committee's note. Thus, Coca–Cola can rely on facts found to be true by the ALJ and FTC, including (1) what health claims were made by POM; (2) whether these claims were efficacy or establishment claims; (3) what scientific evidence supported those health claims; (4) whether POM's health claims are deceptive due to inadequate substantiation; and (5) whether POM's claims were material to consumers. Each of these findings is one of fact, and therefore the proper subject of judicial notice. *See, e.g., POM Wonderful, LLC, et al. v. FTC*, 777 F.3d 478 (D.C.Cir.2015); *Kraft, Inc. v. F.T.C.*, 970 F.2d 311 (7th Cir.1992). The cases cited by POM are distinguishable.[8]

Moreover, Federal Rule of Evidence 803(8)(A)(iii) creates an exception to the rule against hearsay for "[a] record or statement of a public office if ... it sets out ... in a civil case or against the gov-

Administration or Department of Justice that such a violation occurred. 49 F.Supp.2d 1344, 1359 (S.D.Fla.1997). The second case, *Carlson v. Coca–Cola Co.*, does not involve allegations of unclean hands at all, but instead broadly holds that a consumer cannot invoke the jurisdiction of federal courts solely by alleging that defendants engaged in business practices that violate the FTC Act. 483 F.2d 279, 280 (9th Cir.1973).

8. *See M/V Am. Queen*, 708 F.2d at 1491 (upholding the district court's use of unpublished, unrelated district court orders to iden-

tify general policy considerations relevant to the reasonableness of limitation provision, but noting that it would have been improper for the court to have "upheld the applicability of [a contract] provision as reasonable solely because prior courts had done so"); *Hynix Semiconductor Inc. v. Rambus Inc.*, Nos. CV–00–20905 RMW, C–05–00334 RMW, C–05–02298 RMW, C–06–00244 RMW, 2007 WL 3284060, at *1 (N.D.Cal. Sept. 25, 2007) (holding that a finding by the FTC that defendant violated the FTC Act cannot establish, as a matter of collateral estoppel, a violation of California's unfair competition law).

ernment in a criminal case, factual findings from a legally authorized investigation" and if the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness. Fed.R.Evid. 803(8)(A)(iii). The Initial Decision and FTC Opinion, which resulted from a legally authorized investigation by the FTC, contains a number of factual findings regarding the lack of substantiation underlying several of POM's health advertisements, and POM has not demonstrated that either the Initial Decision or FTC Opinion lacks trustworthiness. *See POM Wonderful, LLC, et al. v. FTC*, 777 F.3d 478 (D.C.Cir.2015). That POM has petitioned the United States Supreme Court for a writ of certiorari to review *POM Wonderful, LLC, et al. v. FTC*, 777 F.3d 478 (D.C.Cir.2015) does not alter the admissibility of the ALJ's Initial Decision or the FTC Opinion. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir.1988) ("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal . . . ." (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4433, at 308 (1981))). What portions of the Initial Decision and FTC Opinion can be presented to the jury is the subject of POM's second motion in limine, and will be addressed at a later date. (*See* POM's Mot. in Limine No. 2, ECF No. 544.)

Even if Coca–Cola were unable to rely on the Initial Decision or the FTC Opinion, however, the Court would nevertheless find that a genuine issue of fact exists regarding whether POM engaged in inequitable conduct. Coca–Cola seeks to offer at trial evidence that POM engaged in inequitable conduct by advertising the results of studies regarding the purported health benefits of pomegranate consumption when POM knew that these and related studies reached inconclusive, statistically insignificant, or even negative results. For example, Coca–Cola points to advertisements by POM claiming that pomegranate and pomegranate juice consumption (1) reduces the risk of heart disease (Zalesin Decl., Exs. 2–5); (2) prevents men from "dying of prostate cancer" (Zalesin Decl., Exs. 5, 15–18); and (3) improved erections in men (Zalesin Decl., Exs. 22–23, 27–28). Coca–Cola has also supplied evidence that studies relied on and referenced in these advertisements (1) reached inconclusive results (Zalesin Decl., Exs. 6–8); (2) were undermined by other research that POM forestalled (Zalesin Decl., Exs. 9, 11–14); (3) relied on improper premises, methods, and indicators (Zalesin Decl., Exs. 19–21); (4) were known by POM employees to be statistically insignificant (Zalesin Decl., Exs. 24–27, 42, 56); and (5) were determined by independent authorities, including the United States government, at an early stage to be unsubstantiated (Zalesin Decl., Exs. 31–39, 46–48).[9] This evidence tends to show that POM knowingly relied upon inconclusive, discredited, or simply false studies in its health advertisements to consumers, and is sufficient to create a genuine issue whether POM engaged in inequitable conduct.[10]

---

9. POM argues that "[t]he majority of the evidence cited by Coca–Cola lacks foundation, authentication, and constitutes inadmissible hearsay offered to prove the truth of the matter asserted." (Pl.'s Reply to Def.'s Response to Statement in Opp'n to Pl.'s Mot. 18.) The Court finds no reason, however, why Coca–Cola would be unable to provide foundation for and authenticate the cited advertisements, many of which were produced by POM during discovery and presumably could be au-

thenticated by POM's witnesses. Moreover, Coca–Cola would have an opportunity at trial to call as witnesses POM's employees and experts deposed in the instant action, as well as the authors of a number of the cited studies, some of whom have been listed on previous versions of POM's witness lists, to provide foundation for and authenticate the studies' findings.

10. Cases cited by POM in which a court found that the doctrine of unclean hands does

### 3. Conclusion Regarding Sufficiency of Health Advertising Claim

For the foregoing reasons, the Court finds that Coca–Cola has introduced evidence sufficient to create a genuine issue as to whether POM's conduct is inequitable. The Court also finds that POM's alleged conduct "directly relates" to the conduct that POM alleges constitutes false advertising and unfair competition. Thus, the Court **DENIES** POM's Motion as to pertains to Coca–Cola's health advertisement claim.

### C. "From Concentrate" Claim

POM offers two arguments why Coca–Cola's unclean hands defense based on POM's advertisements that its pomegranate products are "fresh-squeezed" and "not from concentrate" cannot raise a triable issue. First, POM argues that the issue of whether its juice products are "from concentrate" has no immediate or direct relation to Coca–Cola's alleged false advertising of its products' pomegranate and blueberry content. (Mot.15–16.) POM also contends that because there "is no dispute that the 'from concentrate' language is on every bottle of POM's juice," Coca–Cola's unclean hands defense premised on POM's "fresh-squeezed" advertisements fails as a matter of fact. (Mot.4, 16.)

Coca–Cola does not address POM's contentions in detail, but instead argues that this aspect of POM's Motion is moot because "Coca–Cola intends to focus its time at trial on these two pillars of its unclean hands defense, and will not offer proof that Pom has obfuscated the fact that its juice is 'from concentrate.' " (Opp'n 2 n.1.) Because POM moves for partial summary judgment on this issue and because Coca–Cola neither opposes this aspect of POM's Motion nor intends to offer proof at trial as to this issue, the Court **GRANTS IN PART** POM's Motion and **STRIKES** the following language from Coca–Cola's Thirty Forth Affirmative Defense:

> In addition, Plaintiff's name, label, advertisements, website, and promotions of Plaintiff's pomegranate juice products— including its 100% pomegranate juice product and its 100% juice blend products, such as its Pomegranate Blueberry 100% Juice product—are designed to give consumers the false impression that these juices are fresh-squeezed, and not "from concentrate."

### D. Ingredient Claim

Although POM requests that the Court issue an order granting partial summary judgment against the entirety Coca–Cola's unclean hands defense, (Mot.18), POM does not address in the Motion Coca–Cola's claim that POM mislead consumers as to the content of its own juices-i.e., the allegation that POM "describes its Pomegranate Blueberry juice product as Pomegranate Blueberry 100% Juice, yet at the time it filed its Complaint, Plaintiff's product contained other ingredients, including plum, pineapple, apple, and blackberry juices from concentrates and natural flavors" (Answer 12).

---

not apply are inapposite. *Contra Tube Forgings of Am., Inc. v. Weldbend Corp.,* 788 F.Supp. 1150, 1152–53 (D.Or.1992) (granting summary judgment in favor of plaintiff where the only evidence submitted by defendant was that plaintiff advertised that its products were "completely domestic," but admitted in a deposition that it "sporadically" imported some foreign components, finding that defendant failed to come forward with evidence sufficient to meet the burden applicable under *Liberty Lobby* ); *Welch,* 737 F.Supp.2d at 1105 (denying defendant's motion for summary judgment on its unclean hands defense in part because defendant failed to persuade the Court that plaintiff's conduct was sufficiently inequitable to permit plaintiff to proceed on its affirmative claims against defendant).

Because POM has introduced no argument with respect to this aspect of Coca–Cola's unclean hands defense, the Court **DENIES** summary judgment as to this issue.

## IV. *RULING*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** POM's Motion for Partial Summary Judgment.

IT IS SO ORDERED.